HENRY D. TUDOR, trustee, *vs.* DAVIS R. VAIL & others.

Suffolk. January 16, 1907. — March 1, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Trust,* Termination. *Conflict of Laws. Power. Devise and Legacy.*

A trust settlement made by a husband for the benefit of his wife, containing a provision that the trust shall terminate upon the death of the husband if by his will he shall by the execution of a power of appointment under the will of his

father secure to his wife "an income of $10,000 per annum during the term of her natural life," is not terminated under this clause on the death of the husband by his leaving a will with a provision, assuming to exercise the power of appointment under the will of his father, to secure an income of $10,000 to his wife only so long as she shall remain his widow, and making the provision conditional upon her releasing her rights under the indenture of settlement.

A trust settlement made by a husband for the benefit of his wife contained a provision that the trust should terminate upon the death of the husband if by his will he should by the execution of a power of appointment under the will of his father secure to his wife "an income of $10,000 per annum during the term of her natural life." Then followed a provision that the trust should terminate upon the death of the husband "if in and by his last will and testament" the husband "shall otherwise than as above provided . . . provide for her an income of $10,000 or more per annum and she shall elect in writing, within one month after the probate of his will, to accept such last mentioned testamentary provision." The husband died, leaving a will by the residuary clause of which he provided for his wife an income of more than $10,000 for her own use during her natural life so long as she should remain his widow. The widow elected in writing, within one month after the probate of the will, to accept this provision, but attempted also to retain her rights under the trust settlement. *Held*, that the provision of the husband's will with the widow's acceptance of it terminated the trust upon her election in writing to accept this provision.

The administration of a trust created and existing in Massachusetts is governed by the laws of this Commonwealth, and the fact that the settlor who executed the indenture creating the trust was domiciled in another State at the time of his death does not affect the distribution of the trust fund under a power of appointment exercised by his will proved in such other State.

A trust settlement made by a husband for the benefit of his wife provided that on the termination of the trust the trust fund should be paid to him, "if living, and if not, then to such persons as shall be appointed by his last will and testament to receive the same, and in default of such appointment," to his children in equal shares. By his will he made a provision for his wife upon the condition that she should relinquish her right in the trust fund, and provided that the trust fund thereupon should revert to and become a part of his estate. Upon his death his wife did not accept this provision and it did not become operative. Then followed in his will a residuary clause making a provision for his widow during her life so long as she should remain his widow, which provision she accepted, and this provision thus accepted by her terminated the trust under its terms. The residuary clause of the will further provided that upon the decease of his wife, or upon her re-marriage, if she should re-marry, the trustees should hold the residuum of his estate in trust for the benefit of three of his five children. By the next article of the will he declared that his other two children were omitted intentionally because ample provision was made for them by the will of his father. *Held*, that the residuary clause of the will operated as an appointment under the testamentary power contained in the indenture of trust and that the trust fund created by the settlement should be paid over to the executor of the will.

A general residuary clause in the will of the donee of a power of testamentary appointment operates as an appointment unless there is something in the will indicating a different purpose on the part of the testator.

BILL IN EQUITY, filed in the Supreme Judicial Court on November 1, 1906, by the trustee under certain indentures described in the opinion, for instructions whether the trust created by those indentures had been terminated, and, if it had been terminated, who were the persons to whom he should pay over the trust fund.

The case came on to be heard before *Morton,* J., who at the request of the parties reserved it upon the bill and answers for determination by the full court, such disposition to be made of it as to the full court should seem meet.

A portion of the indenture of January 14, 1905, mentioned in the opinion, was as follows:

" The said trust shall determine . . .

" (C) Upon the death of said James A. Garland leaving the said Marie T. Garland him surviving, if in and by his last will and testament the said James A. Garland shall, in pursuance of the power of appointment in that behalf vested in him by the Fourth Article of the last will and testament of his father, the late James A. Garland, direct that so much of the trust fund, therein referred to, as may be sufficient to secure the payment to the said Marie T. Garland of an income of Ten thousand dollars ($10,000.) per annum during the term of her natural life, shall be held in trust for and the income thereof paid to her during her life; or

" (D) Upon the death of the said James A. Garland leaving the said Marie T. Garland him surviving, if in and by his last will and testament the said James A. Garland shall otherwise than as above provided in clause (C) provide for her an income of Ten thousand dollars ($10,000.) or more per annum and she shall elect in writing, within one month after the probate of his will, to accept such last mentioned testamentary provision.

" Upon any determination of said trust the principal of the trust fund shall be forthwith paid over to the said James A. Garland, if living, and if not, then to such persons as shall be appointed by his last will and testament to receive the same, and in default of such appointment then share and share alike unto the children of the said James A. Garland and Marie T. Garland and their issue *per stirpes* and not *per capita.*"

James A. Garland died on September 13, 1906. He left a

will dated July 19, 1906, which was admitted to probate by the Probate Court in the town of Portsmouth in the State of Rhode Island on October 8, 1906. A portion of the will was as follows:

" *Ninth.* — Whereas my father James A. Garland, late of the City of New York deceased, under and by sub-division First of Article Fourth of his will, did bequeath the sum of five hundred thousand dollars upon certain trusts in favor of me during my life and after my decease upon trusts for my children and his grandchildren as in said will declared, and did further provide ' The directions given above for the disposition of the said separate fund upon the death of said James A. Garland, junior, are subject to the proviso that he may, by will, direct that so much of said fund not accruing under Article First or subdivision Third of Article Fourth of this will, as may be sufficient to secure the payment to his widow of an income not more than ten thousand dollars per annum during the term of her natural life, shall be held in trust for and the income thereof paid to, his widow during her life, and that such direction shall be carried into effect by my said executors and trustees.' Now in exercise of the foregoing power I hereby direct that the executors and trustees under the will of my father shall pay to my said wife from the income of said fund the sum of ten thousand dollars per annum during the term of her natural life so long as she shall remain my widow ; provided, however, and said annuity is hereby given to my said wife upon the express condition that in the event that she accepts said annuity she shall release and discharge in such form as may be satisfactory to my executors all right, title and interest in and to a certain trust fund created for her benefit at the time of her re-marriage with me ; and that said trust fund shall thereupon revert to and become a part of my estate and be discharged from all trusts in favor of my said wife ; and in case my said wife shall elect not to relinquish her right in said trust fund, then the gift of the annuity aforesaid shall become null and void.

" *Tenth.* — All the rest, residue and remainder of my estate, real and personal, of every kind and nature and wheresoever the same may be situated, of which I shall be seised and possessed or to which I shall be entitled at the time of my decease, I give, devise and bequeath unto my wife, Marie Tudor Garland,

Davis R. Vail and Henry D. Tudor of the City of Boston, as joint tenants in trust for the uses, intents and purposes and with and subject to the powers and limitations hereinafter expressed and declared of and concerning the same, that is to say.

"In trust, that they and the survivors and survivor of them and other the trustees or trustee under these trusts for any time being, all and each hereinafter referred to as 'my said trustees,' shall stand seised and possessed of said rest, residue and remainder hereinafter called or referred to as 'my said trust estate,' upon trust, to permit my said wife to have the full and unrestricted use, possession and enjoyment during her life so long as she shall remain my widow of my homestead estate and all the lands connected therewith situate on said Prudence Island, together with all fixtures and appurtenances of the same free from rent and from all liability for waste so long as she shall see fit to occupy said estate as a place of residence.

"Upon further trust, that my said trustees shall hold the said trust estate, subject and without prejudice to the rights of my said wife to the use and occupation of said homestead estate, in trust, to lay out and invest the same in the name of my said trustees and to continue so long as my said trustees may think best any part or parts of my said trust estate in the form of investments in which the same may happen to be at the time of my decease even if hazardous or doubtful.

"And I further authorize and direct my said trustees to collect and receive the rents, income, dividends and profits arising from my said trust estate howsoever invested, and to pay therefrom all taxes and other expenses attending the care and management of the trust estate including a reasonable compensation for services in the trusteeship, and to pay the balance of said rents, income, dividends and profits quarter-yearly to my said wife for her own use during her natural life so long as she shall remain my widow.

"And I further will and declare that upon the decease of my said wife, or upon her re-marriage, if she shall re-marry, my said trustees shall stand seised and possessed of my said trust estate upon trust for the benefit of my sons James A. Garland, junior, Charles Garland and Hamilton Garland and their issue in the manner following, . . .

" *Eleventh.* — I declare that I intentionally omit to make any provision in my will for my son Tudor Garland and my daughter Hope Garland as ample provision is made for them in and by the will of my father James A. Garland.

" *Twelfth.* — I declare that the provisions herein contained in favor of my wife are in lieu of her dower and all other rights in my estate.

" *Thirteenth.* — I appoint my wife Marie Tudor Garland, Davis R. Vail and Henry D. Tudor executors of this my will, and I direct that they and each of them shall be exempt from giving a surety or sureties on their official bond."

*F. Rackemann*, for the executors of the will of James A. Garland.

*J. G. Palfrey*, guardian *ad litem* for James A. Garland, Charles Garland and Hamilton Garland.

*A. Boyden*, guardian *ad litem* for Tudor Garland and Hope Garland.

*H. Twombly*, guardian *ad litem* for persons not ascertained or not in being.

*John Chipman Gray*, (*R. Gray* with him,) for Marie T. Garland, widow of the testator.

KNOWLTON, C. J. The plaintiff is the trustee under two indentures signed by James A. Garland, for the benefit of his wife Marie T. Garland, one bearing date September 28, 1904, and the other January 14, 1905. The second contains an article as follows : " Fifth. This agreement is intended to carry into effect said agreement of September 28, 1904, according to the true intent and meaning thereof and if there shall be any conflict between the provisions hereof and said former agreement, then the provision of this agreement shall be held to be controlling as expressing the real intentions of the parties." James A. Garland and his wife had been divorced. When the first indenture was made they were contemplating remarriage, and when the second was executed the remarriage had taken place. He has deceased, leaving a will, and the principal question is whether the trust created by the indentures has terminated. By reason of the second indenture and the action of the parties under it the first has become of little consequence. Possibly its words may throw light upon the meaning of slightly different

language in the second, and upon the construction of the settler's will.

It is plain that the trust was not terminated under the provision of clause (C) of the second indenture; for by the terms of that clause the trust would come to an end only by the execution in James A. Garland's will of a power of appointment under the will of his father, which should secure to his wife "an income of ten thousand dollars ($10,000) per annum during the term of her natural life." The ninth article of the will of James A. Garland, which assumes to exercise the power, secures this income to her only so long as she shall remain the testator's widow, and makes the provision conditional upon her releasing her rights under the indenture. The trust is not affected by this article of the will.

Clause (D) of the indenture declares that the trust shall determine "upon the death of the said James A. Garland leaving the said Marie T. Garland him surviving, if in and by his last will and testament the said James A. Garland shall otherwise than as above provided in clause (C) provide for her an income of ten thousand dollars ($10,000) or more per annum and she shall elect in writing, within one month after the probate of his will, to accept such last mentioned testamentary provision." By the residuary clause of his will he provided for her an income of more than $10,000 per annum, and she elected in writing, within one month after the probate of the will, to accept the provision. While she made her acceptance absolute, she did not admit that she thereby relinquished her rights in the trust fund created by the indenture, but attempted to retain them. The duration of the period for which she should receive income under the residuary clause of the will was stated in these words: "during her life so long as she shall remain my widow." The question arises whether an income which she elects to accept, and which will continue during her life unless she marries again, answers the meaning of clause (D) of the indenture. The widow contends that nothing less than an income absolutely and at all events for life would answer the requirement of the clause.

It is to be noticed that there is a difference between clause (C) of the indenture and clause (D) in this particular. In the former the payment of the income must be "during the term of her natural life," and this provision is to terminate the trust

without reference to her wishes, while in the latter the required income is to be the same in form and amount, but it is not stated to be for any particular time, and it terminates the trust only if, within one month after the probate of the will, she elects in writing to accept it. If the two provisions were exactly alike in the use that she could make of them, there is little, if any, reason why one should take effect independently of her wishes and the other should be dependent on her election. If we assume that the clause means an income of which she may have the benefit for her life if she chooses, we are of opinion that the fact that it is made terminable on a condition subsequent, dependent on her voluntary act, does not make it the less such an income as was meant by the indenture, if she elects to accept it. The suggestion that it shall be an income which may be made available for life comes only by inference. We may assume that she would not be content with anything less. The income must be of such duration as she is willing to accept; but there is no express statement as to the length of time of its continuance. The implication of meaning to be derived from the circumstances and the context does not necessarily go further than to call for an income which shall be for life at her election.

Under this clause her husband, by his last will and testament, is to provide for her an income of $10,000 or more per annum. This naturally means an income for her as his widow. Presumably, on remarriage she would cease to need a provision from him. So long as she remains his widow would be as long as he would be expected to provide an annual income for her support. We are of opinion that such a provision, with her acceptance of it, satisfies the intention of the parties as it is expressed in clause (D) of the indenture. The trust was terminated on her election in writing to accept this provision.

The remaining question is, What shall be done with the fund in the hands of the trustee? The language of the indenture on this subject is as follows: " Upon any determination of said trust the principal of the trust fund shall be forthwith paid over to the said James A. Garland, if living, and if not, then to such persons as shall be appointed by his last will and testament to receive the same, and in default of such appointment then share and share alike unto the children of the said James A. Garland

and Marie T. Garland and their issue *per stirpes* and not *per capita*."

This provision, taken as a whole, differs but little from a statement that it shall be treated as a part of his estate. The settlement upon the widow was in lieu of dower. The precise question before us is whether his will is to be treated as an appointment of it, or whether it passes to his children in equal shares. The fact that the testator was domiciled in Rhode Island when his will was proved does not affect the decision of the case. The common law of Rhode Island is presumed to be like that of Massachusetts, and if it were not, the law of this State would govern in the administration of a trust created and existing in Massachusetts. *Hazen* v. *Mathews*, 184 Mass. 388, 391. *Sewall* v. *Wilmer*, 132 Mass. 131.

The will contains a residuary clause, giving, in broad terms, all the property of every kind of which the testator is possessed, and to which he is entitled, to trustees who are the same persons named as his executors. He knew of this property of which he had the power of disposal by his will. He made a special provision in regard to it in case his wife should accept the benefit given her under the ninth article of his will. She did not accept it, and this special provision does not take effect. He also knew that he made another provision for his wife, which, if she elected to receive it, might terminate the trust under clause (D) of the indenture. We have the residuary clause of the will, which, treated as an appointment, makes the same disposition of this fund which he made under the ninth article of the will that did not take effect.

It is a general rule that such a residuary clause will operate as an appointment unless there is something in the will indicating a different purpose on the part of the testator. *Stone* v. *Forbes*, 189 Mass. 163, 170, and cases cited.

We are of opinion that there was a valid appointment of this fund in the will of James A. Garland, and that it should be paid over to the persons who are executors of his will. *Olney* v. *Balch*, 154 Mass. 318.

*Decree accordingly.*