**STATE STREET TRUST CO. et al., Executors u/w/o Milton L. Cushing,**

v.

**UNITED STATES of America.**

Civ. A. No. 56–546.

United States District Court
D. Massachusetts.

March 19, 1958.

Peabody, Arnold, Batchelder & Luther, William Minot, Robert D. Power, Boston, Mass., for plaintiff.

James P. Garland, John J. Sexton, Jr., Attys., Dept. of Justice, Washington, D. C., Andrew A. Caffrey, Asst. U. S. Atty., Boston, Mass., for defendant.

SWEENEY, Chief Judge.

This action was brought by the executors of the estate of Milton L. Cushing to recover alleged overpayments of estate taxes. They assert that the Commissioner erroneously included in the gross estate the value of three trusts, approximately $100,000, and that the estate is entitled to larger deductions for executors' and legal fees than were allowed by the Commissioner.

### Findings of Fact

In 1925, the decedent set up three trusts for the benefit of three of his children, Carolyn, Joseph and Milton W. No trust was established for a fourth child since the decedent thought that she was sufficiently well provided for by her husband. These trusts were irrevocable, but there was a possibility of reverter in the decedent, and the trust deeds provided that if the decedent so requested, the entire income and corpus was to be distributed to the respective beneficiaries.

At some time in 1949, the decedent became concerned about the effect of Estate of Spiegel v. Commissioner, 335 U.S. 701, 69 S.Ct. 301, 93 L.Ed. 330, on these trusts. He also wished to make some changes in the very rigid and restrictive investment provisions and, since two of the beneficiaries had been married and divorced, he thought that the terms of the original trust were no longer adequate. Accordingly, the remaining balance of corpus and income was distributed to the beneficiaries conditioned upon their creating new trusts. They immediately established trusts of the same property which incorporated the desired changes and named the decedent and the Old Colony Trust Company co-trustees. Nine months later Mr. Cushing died.

The plaintiff admits that the decedent must be treated as settlor of the new trusts and that, therefore, the powers given to the trustees under those trusts must be treated as having been "reserved by the settlor."

The government's first contention is that the creation of the 1949 trusts was a transfer in contemplation of death and that this property is therefore includable in Cushing's gross estate under § 811(c) (1) (A) of the 1939 Internal Revenue Code, 26 U.S.C.A. I find, as a matter of fact, that the 1949 changes were made principally to carry out the decedent's original purpose—to make sure the maintenance of his children, and conclude that Allen v. Trust Company of Georgia, 326 U.S. 630, 66 S.Ct. 389, 90 L.Ed. 367, governs this case and that these transfers were not made in contemplation of death.

The second argument advanced by the government is that these trusts are includable under §§ 811(c) (1) (B) (ii) and 811(d) (1) by reason of the powers reserved by the settlor as co-trustee.[1]

1. The three trusts are substantially identical in form and contents and the relevant sections of the trust deeds read as follows:

"*First.* Until my death, or until the Trust Fund shall have been exhausted (whichever event first occurs), my said Trustees shall pay the net income from the Trust Fund to me, quarterly, or oftener if practicable. In addition to the income payments hereinbefore provided, my Trustees may, from time to time, in their sole and uncontrolled discretion, pay to me or for my benefit, such portion or portions of the principal of this Trust Fund as my Trustees may deem necessary or advisable for my comfortable maintenance and/or support.

"*Third.* In addition to and not in limitation of all common law and statutory authority, the Trustees shall have power to mortgage, lease with or without option to purchase, and to sell at public or private sale, all or any part of the real and personal property of the Trust, without the approval of any Court and without liability upon any person dealing with the Trustees to see to the application of any money or other property delivered to them; to exchange property for other property; to retain any security originally transferred to them hereunder now or in the future; to retain and invest and reinvest in securities or properties although of a kind or in an amount which ordinarily would not be considered suitable for a trust investment, including, but without restriction, investments that yield a high rate of income or no income at all and wasting investments, intending hereby to authorize the Trustees to act in such manner as it is believed by them to be for the best interests of the Trust Fund, regarding it as a whole, even though particular investments might not otherwise be proper; to keep any or all securities or other property in the name of some other person, firm or corporation or in their own names without disclosing their fiduciary capacities; to determine what shall be charged or credited to income and what to principal notwithstanding any determination by the courts and specifically, but without limitation, to make such determination in regard to stock and cash dividends, rights, and all other receipts in respect of the ownership of stock and to decide whether or not to make deductions from income for depreciation, amortization or waste and in what amount; to participate in such manner as they deem proper in any reorganization, merger or consolidation affecting any of the Trust Property; to determine who are the distributees hereunder and the proportions in which they shall take; to make distributions or divisions of principal hereunder in property in kind at values determined by them; to pay, compromise or contest any claim or other matter directly or indirectly affecting the Trust Property; to employ counsel for any of the above or other purposes and to determine whether or not to act upon his advice; to apportion their compensation in part to principal in their discretion; and generally to do all things in relation to the Trust Fund which I, the Donor, could do if living and the Trust had not been executed. All such acts and decisions made by the Trustees in good faith shall be conclusive on all parties at interest and my Trustees shall be liable only for their own wilful acts or defaults, but in no case for acts in error of judgment. The Trustees shall be entitled to receive reasonable compensation for their services hereunder, and reimbursement of their expenses.

"It is understood and expressly agreed that the said Milton L. Cushing as Co-Trustee or Charles K. Pope as his successor Trustee may recommend in writ-

Section 811(d) (1) includes in the gross estate property transferred by the decedent where the enjoyment thereof was subject, at his death, to any change through the exercise of a power to alter, amend, revoke or terminate. Section 811 (c) (1) (B) (ii) provides for inclusion of property transferred by the decedent under which he has retained for his life the right to designate the persons who shall possess or enjoy the property or the income therefrom. The theory behind both provisions is that when a person is entitled to control the enjoyment or devolution of property and such control ceases by reason of that person's death, there is a shift of economic benefits at the time of his death and a death tax should be due. See Porter v. Commissioner, 228 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880.

The executors argue, however, that since all the powers reserved here were qualified by an external standard and, therefore, subject to the scrutiny and supervision of a court of equity, they do not bring the property within the reach of § 811(c) or (d). Jennings v. Smith, 2 Cir., 161 F.2d 74.

■■■ With respect to the trustee's power to invade capital for the "comfortable maintenance and/or support" of each beneficiary, I am of the opinion that the reasoning of the Jennings case applies. These are Massachusetts trusts, subject to the laws of this state, Tudor v. Vail, 195 Mass. 18, 80 N.E. 590; Greenough v. Osgood, 235 Mass. 235, 126 N.E 461, and it is quite clear that language such as is involved here does create enforcible rights in the beneficiary, Corkery v. Dorsey, 223 Mass. 97, 111 N.E. 795, even where the payment of principal is left to the trustee's "sole and uncontrolled discretion." Boyden v. Stevens, 285 Mass. 176, 188 N.E. 741.

■ There remain for consideration all the management powers set out in Article Third and particularly the trustees' power to exchange assets. A power to exchange assets of the trust for other assets has been expressly held to be sufficient in and of itself to bring the entire corpus within the gross estate, Commonwealth Trust Co. of Pittsburgh v. Driscoll, D.C.Pa., 50 F.Supp. 949, affirmed on opinion of the District Court, 3 Cir., 137 F.2d 653, certiorari denied 321 U.S. 764, 64 S.Ct. 521, 88 L.Ed. 1061, and the only question is whether the power is so qualified by a determinable standard as to come within the rationale of the Jennings case. I hold that it is not. There is no limitation that the exchange must be for assets of equal value, or that it must not affect the relative rights of the life beneficiaries or remaindermen. The only condition is a general one that the trustees are "to act in such manner as is believed by them to be for the best interest of the Trust Fund, regarding it as a whole." This limit on the trustees' discretion does not create any clearly definable rights in the beneficiaries and in this respect the power to exchange assets differs from the power to invade capital in the instant case, as well as the Jennings Case. The right to exchange assets gave the decedent tremendous power to affect the interests of the life beneficiaries and remaindermen and this is precisely the kind of right Sections 811(c) and (d) were intended to reach.

On the issue of allowable deductions for executors' commissions and legal fees, I will not overrule the Commissioner who is far more familiar with the estate than I am. The estate may, however, take a deduction of $2,000 as a reasonable fee for the prosecution of this action. Jane Smith Green Ex'r v. U. S., 57–2 U.S.T.C. 11,713.

ing to the Old Colony Trust Company, Co-Trustee, the purchase of securities other than those now in the Trust Estate and in such case the Old Colony Trust Company shall not be liable or chargeable for any loss which may result to the trust estate arising from the purchase or retention in the trust estate of such securities recommended by the said Milton L. Cushing or the said Charles K. Pope."

### Conclusions of Law

From the foregoing I conclude and rule that the three trusts were properly included in the decedent's gross estate. I further rule that the estate is entitled to a deduction of $2,000.

Judgment may be entered for the plaintiff in the amount of a refund resulting from an additional deduction of $2,000.