**STATE STREET TRUST COMPANY et al., Executors, Plaintiffs, Appellants,**

v.

**UNITED STATES of America, Defendant, Appellee.**

**No. 5379.**

United States Court of Appeals First Circuit.

Heard Oct. 7, 1958.

Decided Jan. 23, 1959.

Dissenting Opinion Feb. 25, 1959.

William Minot, Boston, Mass., with whom Thomas W. Tavenner and Peabody, Arnold, Batchelder & Luther, Boston, Mass., were on the brief, for appellants.

Kenneth E. Levin, Atty., Dept. of Justice, Washington, D. C., with whom Andrew F. Oehmann, Acting Asst. Atty. Gen., and Lee A. Jackson and L. W. Post, Attys., Dept. of Justice, Washington, D. C., and Anthony Julian, U. S. Atty., and Andrew A. Caffrey, Asst. U. S. Atty., Boston, Mass., were on the brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a judgment entered in a civil action brought under Title 28 U.S.C. § 1346(a) (1) by the executors of the estate of Milton L. Cushing to recover an asserted overpayment of estate taxes resulting primarily from the Commissioner's inclusion in the decedent's gross estate of the value of three *inter vivos* trusts of which the decedent was in effect the settlor and at the time of his death a co-trustee. After trial without a jury the District Court, upon its findings of fact and conclusions of law, held that the value of the three trusts was properly includible in the decedent's gross estate and that the Commissioner had properly disallowed certain claimed deductions for executor's commissions and legal fees. But it held that the estate was entitled to a deduction of $2,000 as the reasonable expense of the prosecution of this action. The court below therefore entered judgment for the plaintiffs in the amount of $567.20, with interest, and the plaintiffs thereupon took this appeal.

It is agreed that the only question now presented is whether the discretionary powers set out in the three trusts render the trust property includible in the decedent's gross estate under § 811(c) and (d) of the Internal Revenue Code of 1939 quoted in material part in the margin.[1]

---

1. "§ 811 Gross estate.
   "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible * * *
       *     *     *     *     *
   "(c) Transfers in contemplation of, or taking effect at, death.
   "(1) General Rule.
   To the extent of any interest therein of which the decedent has at any time made a transfer * * * by trust or otherwise—
       *     *     *     *     *
   "(B) Under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death * * * (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; * * *
       *     *     *     *     *
   "(d) Revocable transfers
   "(1) Transfers after June 22, 1936.
   "To the extent of any interest therein of which the decedent has at any time made a transfer * * * by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person * * * to alter, amend, revoke, or terminate * * *." 26 U.S.C.A. § 811 (c, d).

There is no substantial dispute over the facts. They are as follows:

In 1925 Milton L. Cushing established three spendthrift trusts for the benefit of three of his children wherein he named himself and a bank as co-trustees. These trusts were irrevocable and there was no express reservation of power to alter, amend or revoke, but the settlor reserved the power to terminate them and cause the properties held in the trusts to be distributed to the respective beneficiaries. In 1949 the decedent exercised this power with respect to each of the trusts, but he did so upon the condition that the respective beneficiaries immediately establish new trusts of the property covered in each of the old ones. The beneficiaries did so and the court below held and the appellants agree that in this situation the decedent must be treated as the settlor. Thus, although the trust instruments in issue are written as though the respective beneficiaries are the settlors, it is admitted that actually the decedent was the settlor, and therefore that the powers given to the trustees in these trusts must be regarded as having been reserved by the decedent himself.

The District Court found that the 1949 trusts were created primarily to carry out the decedent's original purpose to assure the maintenance of his three children. More specifically, that court found that because of a possibility of reverter in the 1925 trusts the decedent was concerned about the possible effect of Estate of Spiegel v. Commissioner, 1949, 335 U.S. 701, 69 S.Ct. 301, 93 L. Ed. 330, which held an estate taxable under § 811(c) for the value of an *inter vivos* trust wherein there was the possibility of a reversion to the settlor should he outlive his children and grandchildren. But in addition the court found that the decedent [160 F.Supp. 878] "also wished to make some changes in the very rigid and restrictive investment provisions and, since two of the beneficiaries had been married and divorced, he thought that the terms of the original trusts were no longer adequate." [2]

The three 1949 trusts are substantially identical, and they are similar to the 1925 trusts in that they contain no express reservation of power to alter or amend. They differ from the earlier trusts, however, in that they are expressly irrevocable and there is no reservation of power to terminate them and cause distribution of the trust properties to the beneficiaries. The decedent and Old Colony Trust Company are made co-trustees and in the first paragraph of each of these trusts, the trustees are directed to pay the net income of the trust funds to the life beneficiary named therein, "quarterly, or oftener if practicable," and in addition from time to time to pay to that beneficiary or for his benefit, in their "sole and uncontrolled discretion," such portion or portions of the principal as the trustees "may deem necessary or advisable" for the beneficiaries' "comfortable maintenance and/or support." The District Court held that under Massachusetts law [3] the trustees' power to invade capital for the beneficiaries' "comfortable maintenance and/or support," though broad, nevertheless created determinable rights in the beneficiaries which could be enforced in a court of equity. It therefore concluded that under the rule applied in Jennings v. Smith, 2 Cir., 1947, 161 F.2d 74, the corpora of the trusts were not made taxable to the settlor's estate under § 811(c) or (d), by reason of the trustees' power to invade principal for the support of the life beneficiaries. The government does not urge error in this holding as ground for sustaining the judgment below.

**2.** Accordingly, although the decedent died nine months after the creation of the 1949 trusts, the court below rejected the contention made by the government in that court, but not suggested here as a possible ground for affirmance, that the transfers to those trusts were made by the settlor in contemplation of his death.

**3.** It is conceded that so far as legally permissible the provisions of the trusts are to be interpreted and enforced according to the law of Massachusetts.

The problem on this appeal arises from the provisions of the third paragraph of the trusts wherein the trustees are clothed with broad powers with respect to the investments open to them and their management of the assets of the trusts. The language of this paragraph which the court below found to be so broad that the trustees were not limited in the exercise of their fiduciary duties by any determinable standard, so that the rule of the Jennings case does not apply to prevent inclusion of the corpora of the trusts in the deceased settlor's gross estate, and on which the government relies to sustain that holding, is as follows:

"In addition to and not in limitation of all common law and statutory authority, the Trustees shall have power * * * to exchange property for other property; * * to retain and invest and reinvest in securities or properties although of a kind or in an amount which ordinarily would not be considered suitable for a trust investment, including, but without restriction, investments that yield a high rate of income or no income at all and wasting investments, intending hereby to authorize the Trustees to act in such manner as it is believed by them to be for the best interests of the Trust Fund, regarding it as a whole, even though particular investments might not otherwise be proper; * * * to determine what shall be charged or credited to income and what to principal notwithstanding any determination by the courts and specifically, but without limitation, to make such determination in regard to stock and cash dividends, rights, and all other receipts in respect of the ownership of stock and to decide whether or not to make deductions from income for depreciation, amortization or waste and in what amount; * * and generally to do all things in relation to the Trust Fund which I,

the Donor, could do if living and the Trust had not been executed."

In conclusion the third paragraph of the trusts provides: "All such acts and decisions made by the Trustees in good faith shall be conclusive on all parties at interest and my Trustees shall be liable only for their own wilful acts or defaults, but in no case for acts in error of judgment."

The case is very close, but we agree with the result reached by the District Court.

It is true that it is not at all unusual to clothe trustees with power to invest trust assets in securities other than so-called "legals." And it is also true that it is far from uncommon to provide that trustees shall have the power in their discretion to allocate accretions to the property they hold in trust to principal or to income, at least when there is no settled rule of law to apply and proper allocation is open to honest doubt. Certainly in the exercise of one or both of these powers trustees can to some extent affect the interests of the various beneficiaries. Indeed, even in a trust wherein investment is limited to "legals," a trustee can effect some shifting of benefits between life beneficiaries and remaindermen by his choice of investment with respect to rate of income return or growth potential. But we would hardly suppose that in the ordinary case inclusion of one or both of the above provisions in a trust instrument would be a crucial factor in deciding whether or not the corpus of the trust should be included in a decedent's estate.

This, however, is not an ordinary case. Literally, the trustees have power to exchange trust property for other property without reference to the value of the properties involved in the exchange. And literally, they have power to invest the trust assets in securities yielding either a high rate of income or no income at all, and even in wasting investments, and they have power to invest trust assets in these categories in what-

ever amounts they choose without limitation with respect to the percentage of the trust corpus invested in any one of them. Moreover, the trustees' discretionary power to allocate trust assets to corpus or income is not limited to situations where the law is unsettled and there is honest doubt whether a given accretion or receipt should be classified as capital or income. See Doty v. Commissioner, 1 Cir., 1945, 148 F.2d 503, 507, and Scott on Trusts §§ 232–237 (2d ed. 1956). Indeed the trustees' power of allocation does not seem even to be limited to accretions or receipts but would appear to extend in terms to any item of trust property. Furthermore, the trustees may make deductions from income for depreciation, amortization or waste in whatever amounts they see fit. They are, to be sure, required to exercise good faith in their dealings with the trust properties and furthermore they are admonished "to act in such manner as it is believed by them to be for the best interests of the Trust Fund, regarded as a whole." But they are immune from liability for errors of judgment however gross; their only stated liability is "for their own wilful acts or defaults."

In spite of the breadth of the language used, we do not conceive, however, that short of "wilful acts or defaults," the trustees are as free as the wind in their administration and management of the trusts. As stated by Judge Learned Hand in Stix v. Commissioner, 2 Cir., 1945, 152 F.2d 562, 563: " * * * no language, however strong, will entirely remove any power held in trust from the reach of a court of equity. After allowance has been made for every possible factor which could rationally enter into the trustee's decision, if it appears that he has utterly disregarded the interests of the beneficiary, the court will intervene. Indeed, were that not true, the power would not be held in trust at all; the language would be no more than a precatory admonition."

We may therefore assume that a Massachusetts court of equity at the behest of a beneficiary would intervene not only in the event of a wilful act or default by the trustees, but would also intervene in the event the trustees should act in utter disregard of the rights of a beneficiary. Thus, no doubt, an appropriate court of the Commonwealth in the exercise of its equity jurisdiction would prevent the trustees from putting all, or nearly all, of the trust assets in wasting investments bearing a high rate of income for the benefit of a life tenant at the expense of a remainderman. And no doubt also, the court would step in to prevent the investment of all, or nearly all, the trust assets in a property yielding little or even no income for the benefit of a remainderman at the expense of a life beneficiary. But short of utter disregard of the rights of a life tenant or a remainderman springing from "arbitrary or dishonest conduct or bad faith, or fraud" Dumaine v. Dumaine, 1938, 301 Mass. 214, 224, 16 N. E.2d 625, 630, 118 A.L.R. 834, a Massachusetts court would have no external standard with which to measure the trustees' conduct. The area of the trustees' discretion, although not untrammelled, is about as broad as language can make it and the law permits, and within that area the trustees can act in the administration and management of their trusts to confer or withhold very substantial benefits as between the life tenants and remaindermen.

Perhaps no single power conferred by the decedent on the trustees would be enough to warrant inclusion of the corpora of the trusts in his estate. But we believe that the powers conferred on the trustees, considered as a whole, are so broad and all inclusive that within any limits a Massachusetts court of equity could rationally impose, the trustees, within the scope of their discretionary powers, could very substantially shift the economic benefits of the trusts between the life tenants and the remaindermen. We therefore conclude that under the trusts the decedent as long as he lived, in substance and effect and in a very real sense, in the language of

§ 811(c) (B) (ii), "retained for his life * * * the right * * * to designate the persons who shall possess or enjoy the property or the income therefrom; * * * "4

Since we believe that the corpora of the trusts is includible in the decedent's gross estate under § 811(c) there is no need for us to consider the impact, if any, of § 811(d).

A decree will be entered affirming the judgment of the District Court.

MAGRUDER, Chief Judge, dissents from the opinion and judgment of the Court, and reserves the right to file a dissenting memorandum at a later date.

February 25, 1959.

MAGRUDER, Chief Judge (dissenting).

The opinion of the court in this case was prepared on the eve of our departure for the Caribbean and our court session annually held at San Juan, Puerto Rico. It seemed desirable not to delay announcement of the court's opinion and judgment. Therefore, at the conclusion of the court's opinion, the following notation was added: "Magruder, Chief Judge, dissents from the opinion and judgment of the Court, and reserves the right to file a dissenting memorandum at a later date."

Though this was not quite equivalent to a commitment on my part to file such a memorandum, I still feel that I ought to indicate the reasons for my dissent.

In Van Beuren v. McLoughlin, 1 Cir., 262 F.2d 315, decided by us December 12, 1958, we pointed out the drastic, perhaps even ruthless way in which § 811 (d) of the Internal Revenue Code operates against the taxpayer. The operation of § 811(c) (1) (B), upon which the opinion of the court is here based, is even more drastic, for whenever that section is properly applicable, there must be included in the gross estate the whole value of the corpus of any property which the decedent had transferred during his lifetime. On the other hand, under § 811(d) there must be included in the gross estate only the value of the particular interests, the enjoyment of which had been subject to a change through the exercise of a described power vested in the decedent at the date of his death.

For the reasons explained in my dissenting opinion in Industrial Trust Co. v. Commissioner, 1 Cir., 1947, 165 F.2d 142, 148, 1 A.L.R.2d 144, I would think that the taxpayers here were entitled to claim that only § 811(d) could apply and therefore in any event the whole of the value of the corpus ought not to have been included in the gross estate. But I go further, and suggest that neither § 811(c) nor § 811(d) is properly applicable to this case.

At the outset, I would concede that the fact that the grantor holds the described powers only as a fiduciary is not in itself enough to preclude the imposition of an estate tax. See Welch v. Terhune, 1 Cir., 1942, 126 F.2d 695, certiorari denied 1942, 317 U.S. 644, 63 S.Ct. 37, 87 L.Ed. 519. That case was a holding under § 811(d), but I suppose that by a parity of reasoning the same result must be reached under § 811(c).

It is admitted by the court that the various types of broad powers of management conferred upon the trustees here are familiar grants to trustees as such, and that the case is a "very close" one. Confining itself narrowly to the facts of the particular case, the court says that perhaps "no single power conferred by the decedent on the trustees would be enough to warrant inclusion of the corpora of the trusts in his estate. But we believe that the powers conferred on the trustees, considered as a whole, are so broad and all inclusive that within any limits a Massachusetts court of equity could rationally impose, the trustees, within the scope of their discretionary powers, could very substantially

4. The language of the section makes it clear that it is immaterial that the decedent could exercise his power only in conjunction with his co-trustees.

shift the economic benefits of the trusts between the life tenants and the remaindermen." The court comes to this conclusion, though recognizing that "in the ordinary case" the power of a trustee in the exercise of familiar controls over investments, whereby he would be enabled (and perhaps required by his duties) to effect some shifting of benefits as between a life tenant and remaindermen, cannot amount to a "right" to designate the persons who shall enjoy the property or the income therefrom, within the meaning of § 811(c) (1) (B) (ii).

It seems to me that, despite the undoubtedly broad powers of management vested in the trustees here, the court stretches the statutory language too far. It has to say that these powers of management, taken as a whole, because of their breadth make it impracticable for a Massachusetts court of equity effectively to control the exercise of these fiduciary powers, and therefore constitute a "right" (as distinguished from a "power"—the word used in § 811(d)) to designate the persons who shall enjoy the property or the income therefrom. I know of no case that has gone this far.

Moreover, I cannot accept the premise that a Massachusetts court of equity would consider itself impotent to supervise the administration of these trusts so as to control any attempt to shift the incidence of their enjoyment.

It is difficult to imagine how the power "to exchange property for other property" could contribute to the defect the court found—ability to prefer the life tenants to the remaindermen or vice versa—except perhaps by a warped investment policy (and investment powers are specifically dealt with). A requirement that the trustee obtain fair value, even if not implied by the word "exchange", would certainly be imposed by any court of equity. And the Massa-

chusetts court will look behind an apparently authorized exchange of property and strike it down if it conceals any skulduggery or if its result is detrimental in any way to the purposes of the trust the settlor created. See Morville v. Fowle, 1887, 144 Mass. 109, 112, 10 N.E. 766.

The investment powers, although obviously designed to permit a more imaginative program of investment than trustees usually may pursue, were not uncontrolled. Although the portfolio might contain, instead of "legals", investments in wasting assets companies and in stocks with attractive growth potential but paying no current dividends, the trustees were only authorized "to act in such manner as it is believed by them to be for the best interests of the Trust Fund regarded as a whole." I think this clearly requires the trustees to balance these extraordinary investments so that neither income nor principal would be prejudiced by the unusual nature of the portfolio. The Massachusetts court will enforce such a standard as "best interests" and will substitute its judgment for a bona fide, considered, but unsound decision of the trustee. Corkery v. Dorsey, 1916, 223 Mass. 97, 111 N.E. 795; see Hays' Estate v. Commissioner, 5 Cir., 1950, 181 F.2d 169, 171–172.

The accounting power given to the trustees is obviously corollary to this investment power and necessary to the successful maintenance of this balance; I believe it must be limited to this purpose and restricted to the best interests of the trust as a whole.[1] It is somewhat ironic that a power apparently designed to relax the strict Massachusetts rules that capital gains and stock dividends are both always principal and cash dividends are income, so as to maintain the enjoyment of both the life beneficiaries and the remaindermen, is assigned as

1. The broad language in Dumaine v. Dumaine, 1938, 301 Mass. 214, 16 N.E.2d 625, 118 A.L.R. 834, was uttered in the very different context of a trust which gave the trustee broad discretionary powers to accumulate or pay out the income and also to pay out receipts, whether income or principal.

contributing to the "right" to prefer one over the other.

To me, all these powers are limited by standards which the Massachusetts court of equity could and would apply to supervise effectively the administration of the trust, and therefore none is either a § 811(c) "right" or a § 811(d) "power". See Jennings v. Smith, 2 Cir., 1947, 161 F.2d 74. Nor, since in this context the whole cannot be greater than the sum of its parts, is anything gained by lumping them together.