ESTATE OF FRED A. CUTTER, JOHN W. CUTTER AND PATRICIA COOLEY, CO-EXECUTORS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5647–71. Filed June 20, 1974.

*David M. Bridges* and *John M. Mooney*, for the petitioners.
*Joyce Elaine Britt*, for the respondent.

IRWIN, *Judge:* Respondent determined a deficiency of $117,719 in the estate tax of the Estate of Fred A. Cutter.

Due to certain concessions made by the parties, the only issue remaining for our decision is whether the principal and accumulated income therefrom (or any part thereof) of eight trusts established by the decedent during his lifetime for the benefit of his grandchildren should be includable in his gross estate. This issue depends upon whether the decedent retained the right in each of the trusts to designate the persons who shall possess or enjoy the transferred property or the income therefrom under the provisions of section 2036 (a)(2),[1] or a power to alter, amend, revoke, or terminate the trans-

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.

fer pursuant to the terms of section 2038(a)(1). Resolution of that issue depends upon whether the decedent's rights and powers as trustee in each of the trusts were limited by a judicially ascertainable standard. In addition we must determine the admissibility of certain testimony offered at trial to show the decedent's intent.

### FINDINGS OF FACT

Some of the facts have been stipulated and the stipulation of facts, together with the exhibits attached thereto, are found accordingly.

Fred A. Cutter (hereinafter referred to as decedent) died testate on February 22, 1967, a resident of the State of California. Petitioners John W. Cutter and Patricia Cooley, the son and daughter of the decedent, having been duly appointed as coexecutors of the Estate of Fred A. Cutter, filed a timely estate tax return with the district director for the Northern District of California. Pursuant to section 2032 petitioners elected to value the property includable in the estate as of the alternative valuation date. At the time of the filing of the petition herein John W. Cutter was a resident of Piedmont, Calif., and Patricia Cooley was a resident of Three Rivers, Calif.

Decedent, during his lifetime, executed the following trusts for the benefit of his eight grandchildren:

| Name | Birth date | Trust |
|---|---|---|
| Christine Swartz | 7/21/50 | "Trust Agreement" dated Mar. 16, 1951, and "Amendment to Trust Agreement" dated Aug. 1, 1955. |
| Ralph F. Cutter | 1/25/55 | "Indenture of Trust" dated Aug. 5, 1955, "Amendment to Indenture of Trust" dated Aug. 16, 1955, and "Confirmatory Indenture of Trust" dated Feb. 15, 1962. |
| Norman W. Cutter | 5/25/56 | "Indenture of Trust" dated July 24, 1956, and "Confirmatory Identure of Trust" dated Feb. 15, 1962. |
| Dean D. Cutter | 1/26/59 | "Indenture of Trust" dated Apr. 17, 1959, and "Confirmatory Identure of Trust" dated Feb. 15, 1962. |
| Daniel F. Cutter | 10/18/64 | "Indenture of Trust" dated Dec. 9, 1964, and "Corrected Indenture of Trust" dated Dec. 9, 1964. |
| Stanley B. Cutter | 2/14/63 | "Indenture of Trust" dated June 18, 1965. |
| Neal K. Cooley | 6/ 5/63 | "Indenture of Trust" dated June 18, 1965. |
| James C. Cooley | 3/26/61 | "Indenture of Trust" dated June 18, 1965. |

Pursuant to these documents, decedent made transfers of Cutter Laboratories stock to each of the trusts. The transfers are set out in the margin.[2] These transfers are the only transfers made by the decedent during his lifetime which the respondent contends are includable in the estate.

---

[2] See fn. 2 on p. 353.

The value of the principal of the trusts described above as of the alternative valuation date and of the income accumulated thereon as of the date of decedent's death are as follows:

| | | | |
|---|---|---|---|
| Christine Swartz Trust | $141,901.91 | Neal K. Cooley Trust | $15,549.92 |
| Ralph F. Cutter Trust | 13,909.81 | Stanley B. Cutter Trust | 15,686.74 |
| Norman W. Cutter Trust | 28,105.99 | James C. Cooley Trust | 15,850.91 |
| Dean D. Cutter Trust | 31,893.55 | | |
| Daniel F. Cutter Trust | 21,809.67 | | 279,708.50 |

Only the proportionate amount of principal and income corresponding to the decedent's contribution to each of the eight trusts is contended to be includable in his gross estate.

Each of the eight trusts named the decedent as trustee and was expressly made irrevocable. The decedent remained as trustee until his death.

In each of the trusts the decedent as trustee was to accumulate the income from each trust until the beneficiary thereof attained a certain age and then the trust was to terminate and a distribution made of all the principal and accumulations to such beneficiary. Appropriate provisions were provided in each trust in the event that the beneficiary should die before the termination of the trusts.

In addition, in each trust the decedent as trustee was given the following powers:

provided, however, that said Trustee in his sole discretion may, from time to time, pay to or deliver for the benefit of said * * * [beneficiary] so much of the income, including the whole thereof, as he may deem necessary for the benefit of said * * * [beneficiary]; provided further, that said Trustee in his sole discretion may, from time to time, pay to or deliver for the support and education of said * * * [beneficiary] so much of the principal, including the whole thereof, as said Trustee may deem necessary for said purposes. * * *

At the time of the decedent's death none of the trusts had been terminated.

---

2

| Name of beneficiary | Date of transfer | Number of shares | Identity of shares |
|---|---|---|---|
| Christine Swartz | 3/16/51 | 1,950 | Cutter Laboratories common stock (then unclassified). |
| Ralph F. Cutter | 8/5/55 | 300 | Cutter Laboratories class A common stock. |
| | 6/18/65 | 100 | Cutter Laboratories class B common stock. |
| Norman W. Cutter | 7/24/56 | 300 | Cutter Laboratories class A common stock. |
| | 1/28/60 | 200 | Cutter Laboratories class B common stock. |
| | 6/18/65 | 200 | Cutter Laboratories class B common stock. |
| Dean D. Cutter | 4/17/59 | 300 | Cutter Laboratories class B common stock. |
| | 1/28/60 | 210 | Cutter Laboratories class B common stock. |
| | 6/18/65 | 500 | Cutter Laboratories class B common stock. |
| Daniel F. Cutter | 12/9/64 | 195 | Cutter Laboratories class B common stock. |
| | 6/18/65 | 505 | Cutter Laboratories class B common stock. |
| Stanley B. Cutter | 6/18/65 | 500 | Cutter Laboratories class B common stock. |
| Neal K. Cooley | 6/18/65 | 500 | Cutter Laboratories class B common stock. |
| James C. Cooley | 6/18/65 | 510 | Cutter Laboratories class B common stock. |

354

At issue in this case is whether the transfers in trust made by the decedent during his lifetime are includable in his estate by reason of section 2036(a)(2) or 2038(a)(1).

Section 2036(a)(2) provides for the inclusion in a decedent's gross estate property transferred inter vivos where the decedent-transferor has retained the right "to designate the persons who shall possess or enjoy the property or the income therefrom."

Thus where at the time of his death a settlor (decedent-transferor) of an irrevocable trust retains the power to distribute the trust income or to accumulate such income and add it to principal, both the original principal and the accumulated income of the trust are includable in the settlor's gross estate under section 2036(a)(2). *United States* v. *O'Malley*, 383 U.S. 627, 633 (1966) ; *Estate of Arthur J. O'Connor*, 54 T.C. 969, 973 (1970). In *O'Connor* we noted the following:

the power to deny to the trust beneficiaries the privilege of immediate enjoyment and to condition their enjoyment upon their surviving the termination of the trust has been considered to be of sufficient substance to qualify as a power to "designate" within the meaning of section 2036(a)(2). * * * [54 T.C. at 973.]

See *United States* v. *O'Malley, supra; Industrial Trust Co.* v. *Commissioner*, 165 F. 2d 142 (C.A. 1, 1947), affirming on this issue *Estate of Milton J. Budlong*, 7 T.C. 756 (1946) ; sec. 20.2036–1(b)(3), Estate Tax Regs.

However, if the decedent-transferor as trustee retained such a power and such power is exercisable only pursuant to an ascertainable standard, then there would be no inclusion under section 2036(a)(2) since the decedent retained no real discretion in the exercise of the power. *Jennings* v. *Smith*, 161 F. 2d 74 (C.A. 2, 1947). In *Jennings* the court noted the following:

A "right" so qualified that it becomes a duty enforcible in a court of equity on petition by the beneficiaries does not circumvent the obvious purpose of section 811(c) [the predecessor of sec. 2036] to prevent transfers akin to testamentary dispositions from escaping taxation. * * * [161 F. 2d at 78–79.]

Section 2038(a)(1) provides for the inclusion of property in the gross estate if the decedent retained at his death a power to "alter, amend, revoke, or terminate" the trust and thereby to change the enjoyment thereof pursuant to the exercise of that power. As in section 2036(a)(2), a reserved power to make distributions of trust income or principal pursuant to an ascertainable standard to someone other than the decedent-transferor would not cause inclusion under section 2038(a)(1). See *Estate of Ralph Budd*, 49 T.C. 468 (1968).

Each of the eight trusts here involved provided identical discretionary powers to distribute income and to invade the principal. It is clear that the invasion of principal power is limited by an ascertainable standard. See, e.g., *Estate of Ralph Budd, supra.* The resolution of this case thus turns upon the determination of whether the income distribution power is likewise subject to a judicially ascertainable standard. The specific power in issue reads as follows:

that said Trustee in his sole discretion may * * * pay to or deliver for the benefit of * * * [the beneficiary] so much of the income, including the whole thereof, as he may deem *necessary for the benefit of* * * * [the beneficiary] * * * [Emphasis supplied.]

Having considered this discretionary power to distribute income in the context of the terms of each trust as a whole, we find that the power does not create a judicially ascertainable standard for the reasons stated hereafter.

The underlying concept in the definition of an ascertainable standard rests upon the premise that a person who holds the power to render decisions pursuant to an ascertainable standard, such as a discretion given to a trustee to make distributions out of income or accumulations, really does not have a power, but rather a duty. It is basically a question of accountability. See sec. 25.2511–1(g)(2), Gift Tax Regs. Words such as support, education, maintenance, care, necessity, illness, and accident are generally regarded as providing ascertainable standards; while words such as happiness, pleasure, desire, benefit, best interest, and well-being are generally not regarded as being sufficiently definite so as to provide ascertainable standards. See *Old Colony Trust Co.* v. *United States,* 423 F. 2d 601 (C.A. 1, 1970), and the cases cited therein. Finally, it is to be remembered that it is the *existence* of the power, not the manner in which it is exercised, which causes inclusion if an ascertainable standard is lacking. *Estate of John J. Round,* 40 T.C. 970, 979 (1963), affd. 332 F. 2d 590 (C.A. 1, 1964). If there exists an ascertainable standard, the trustee can be compelled to follow it; if there does not, even though the decedent-transferor is a fiduciary, he in fact retains a broad freedom of choice which is the equivalent to a retention of an incidence of ownership. This will cause inclusion under section 2036(a)(2) or 2038(a)(1).

In this instance the decedent-trustee in his sole discretion could distribute as much of the income as deemed "necessary for the benefit of" each beneficiary. The fact that the power is within the sole discre-

tion of the decedent-trustee will not of itself cause inclusion.[3] *Estate of Ralph Budd, supra* at 475. There we stated:

Nor is a different result required herein by reason of the fact that the trustees' power was discretionary, for the exercise of that power was limited by an external standard fixed by the agreement itself. And although it may be true that a court of equity ordinarily will not substitute its discretion for that of the trustee, nevertheless, even where the power is granted in terms of the "sole" or "uncontrolled" discretion of the trustee, it will review his action to determine whether in light of the standards fixed by the trust instrument, such discretion has been honestly exercised. See *United States* v. *Taylor*, 254 F. Supp. at 755–756; *In re Ferrall's Estate*, 41 Cal. 2d 166, 173–174, 258 Pac. 2d 1009, 1013; *In re Lackmann's Estate*, 156 Cal. App. 2d 674, 678, 320 Pac. 2d 186, 189; *Estate of Walter E. Frew*, 8 T.C. at 1243–1244; *Estate of C. Dudley Wilson*, 13 T.C. at 870, 872–873; *DeLancey* v. *United States*, 264 F. Supp. at 908; *State Street Trust Co.* v. *United States*, 160 F. Supp. 877, 880 (D.Mass.), affirmed on other grounds 263 F. 2d 635 (C.A. 1). Cf. *Estate of Willard V. King*, 37 T.C. 973, 980. * * *

However, to prevent inclusion an ascertainable standard must still be established. Thus we are left with the issue of whether "necessary for the benefit of" in fact creates a judicially ascertainable standard.

In essence petitioners want us to construe "necessary for the benefit of" as narrowly as possible and hold these terms to mean necessary for the support of the beneficiary. See *Orr* v. *Moses*, 52 A. 2d 128 (N.H. 1947).[4] They further seek to have us view the income power herein as limited only to educational and medical needs. Respondent contends that the phrase should be construed broadly and thus lacking a standard to compel payment.

We find that the term "benefit" suggests more than support, and thus is so overly broad as to be incapable of being used as an ascertainable standard. *Estate of Arthur J. O'Connor, supra* at 973; *Dorothy Stuit*, 54 T.C. 580, 583 (1970), affd. 452 F. 2d 190 (C.A. 7, 1971). However, the term "necessary" suggests necessity or need and the possible existence of an external standard. We then must ask ourselves whether "necessary" so limits "benefit" so as to create an ascertainable standard. The key words of a trust must be interpreted in light of their context. Cf. *Salisbury* v. *United States*, 377 F. 2d 700, 706 (C.A. 2, 1967).

Naturally, the intent of the decedent is an important fact to consider. Testimony was presented by the petitioners in an attempt to demon-

---

[3] While Cal. Civ. Code sec. 2269 (West 1954), provides, in effect, that a California court will not substitute its judgment for a trustee's judgment as to the reasonableness of his actions where the trust agreement grants the trustee an absolute or "sole discretion" with respect to such actions, if a trustee refuses to make distributions in accordance with an ascertainable standard provided in the trust agreement, a California court will find an abuse of discretion, even though the instrument purports to confer an absolute discretion as to such distributions. *In re Lackmann's Estate*, 320 P. 2d 186 (Cal. 1958).

[4] The phraseology in issue there was "necessary to or for the benefit of."

strate the intent of the decedent in an effort to convince this Court that the power in issue actually created an ascertainable standard.[5] Respondent contends that such evidence is inadmissible on the grounds of either relevancy, the hearsay rule, or the parol evidence rule. The Court reserved ruling on its admissibility.

Generally, if the language of a trust is unambiguous, extrinsic evidence is inadmissible. While on its face the power in issue appears unambiguous, we find the rule is well stated in *In re Estate of Russell*, 444 P. 2d 353, 358 (Cal. 1968) :

Extrinsic evidence always may be introduced initially in order to show that under the circumstances of a particular case the seemingly clear language of a will * * * actually embodies a latent ambiguity for it is only by the introduction of extrinsic evidence that the existence of such an ambiguity can be shown. Once shown, such ambiguity may be resolved by extrinsic evidence. * * *

Having reviewed the testimony, we find that it fails to reveal any ambiguity in the terms of each trust. We, therefore, rule that petitioners' proffered testimony is inadmissible for the purpose of determining decedent's intent.[6]

Viewing each document as a whole we find a broad discretion intended. While the invasion of principal power is expressly limited to the support and education of each beneficiary, the income power is not so limited.[7] Even if the decedent intended a narrower interpretation, which we believe he did not, we must go by the words of the trust and not any subjective intent. While we note that in this instance the power was perhaps frugally exercised, we must remind petitioners that it is the *existence* of the power that causes inclusion, not the manner in which it is exercised.

We are buttressed in our decision by the discussion in *Dorothy Stuit*, *supra*, regarding the word "benefit." While that case involved Illinois law, we agree that the word "benefit" has a meaning separate from the words "support, maintenance and education" and that "benefit" as

---

[5] The evidence presented established that, except for Christine, no distributions were made by the decedent. Decedent made two distributions of income from the Christine Swartz trust: a $200 distribution in June 1962 to purchase a bedroom suite for Christine Swartz and a distribution in October 1964 to purchase a black-and-white television set. The successor trustees further contended that the decedent's intent was that the trusts were for educational and medical needs. Evidence was also presented concerning the successor trustees' actions.

[6] Even if admissible, our review indicates that the evidence presented by the petitioners is inconclusive as to the intent of the decedent with respect to the power in issue. By the very terms of each trust, the intent cited by petitioners is consistent with the power to invade the principal, and as to that power, there is no question but that it is an ascertainable standard.

[7] Were we to view this power as creating an ascertainable standard then grantors could easily retain significant control over their property and still avoid inclusion in their gross estate. This would clearly not be the intent of the statute.

358

an independent word does not create an external ascertainable standard.[8]

It may be arguable that *Stuit* is distinguishable due to the fact that there we were construing the legislative intent of a uniform act, while here we are construing the intent of a single person. We, however, find the similar dichotomy present distinguishing benefit from education and support.[9] See also *Estate of Cyrus C. Yawkey*, 12 T.C. 1164, 1165 (1949), where the limitation placed on the use of the trustees' discretion was that they pay "for her benefit * * * such portion of the income as they deemed for her best interest." This Court in that instance found no ascertainable standard, stating: "We can not regard the language involved as limiting the usual scope of a trustee's discretion." 12 T.C. at 1170.

While we are somewhat troubled by the word "necessary," we note that in *Leopold* v. *United States*, an unreported case (C.D. Cal. 1972, 29 A.F.T.R. 2d 1518, 72–1 U.S.T.C. par. 12,837), the court held that a standard of distribution as the trustee deemed "necessary and proper" was insufficient to prevent inclusion under section 2038(a).

After carefully reviewing the power in issue, we find that the word "necessary" embodies no more than the decedent's gratuitous directive to do what would have been required had the word been omitted. The word neither adds to nor detracts from what would otherwise have been the decedent-trustee's discretionary power to distribute trust income "for the benefit of" each beneficiary.[10] Cf. *Martha J. Heidrich*,

---

[8] It is to be noted that this Court and two Courts of Appeals have held on occasion that the word "benefit" or "happiness" may be an external standard. *Estate of Edward E. Ford*, 53 T.C. 114 (1969), affd. 450 F. 2d 878 (C.A. 2, 1971) ; *United States* v. *Powell*, 307 F. 2d 821 (C.A. 10, 1962) ; *Salisbury* v. *United States*, 377 F. 2d 700 (C.A. 2, 1967).
  With regard to these cases, we noted the following in *Stuit*:
"In the *Ford* case, the Court noted the repeated use of the word "need" in the trust instrument. We concluded that the decedent did not intend the trustee to invade principal for "happiness" unless the trustee initially determined a "need" for such an invasion. For that reason the word "happiness" must be deemed qualified by the more limiting word "need." The Tenth Circuit in *Powell* looked to the four corners of the trust instrument to determine the meaning of the word "happiness." The trust instrument indicated, said the court, that the power of the settlor-trustee to invade corpus for "happiness" should be exercised with restraint. The Tenth Circuit concluded that "happiness" was to be considered in that case synonymous with the words "welfare" and "comfort" appearing in the same clause of the instrument. The Second Circuit in *Salisbury* also looked to the four corners of the instrument to determine consistent with the decedent's intentions the meaning of the word "benefit." The court held in the context of the instrument that the power of the trustee to invade corpus for the income beneficiary's "benefit" was fixed by an ascertainable standard. [54 T.C. at 584.]"
With reference to the *Ford* case, see fn. 10 *infra*.
[9] Note the limitation placed on the discretionary power to distribute income as opposed to the limitation on the discretionary power to invade the principal.
[10] In making this determination we have considered petitioners' argument that the term "necessary" in each trust creates a fiduciary requirement of need and that this constitutes an ascertainable standard. We have also considered the discussion in *Estate of Edward E. Ford*, *supra*. (See also fn. 8 *supra*.) While a degree of equivalency exists between "necessary" and need, we have found that the term "necessary" taken in the context of the power in issue is not equivalent to need and does not so limit that power.

55 T.C. 746, 751 (1971). Looking to the four corners of each instrument we find that the term "necessary" as used in each instrument does not limit the term "benefit" and does not provide an otherwise lacking ascertainable standard.

While we are cognizant of the fact that the extent to which a power is restricted depends upon the terms of the instrument as interpreted under State law, we find no California case interpreting the words "necessary for the benefit of." We find nothing in the California cases cited by petitioners which effectively limits the broad retention of discretion by the decedent over the income of these eight trusts.

Petitioners rely primarily upon a New Hampshire case, *Orr* v. *Moses, supra.* That case was not adversary in nature and is neither determinative of California law nor binding upon this Court.

We find that the language was plain and unambiguous and conferred no adequate standard by which a California court could limit the decedent's discretion nor enforce each beneficiary's rights. The language is thus so broad that the decedent-trustee was not limited in the exercise of his fiduciary duty by any ascertainable standard so that the rule of *Jennings* v. *Smith, supra,* does not apply. The power retained by the decedent here clearly amounted to an ability to "designate" beneficiaries within the meaning of section 2036(a)(2). *Estate of Arthur J. O'Connor, supra* at 973.

In view of the foregoing, we hold that the trust property and accumulated income therefrom is includable in the decedent's gross estate under section 2036(a)(2).[11]

To reflect concessions,

*Decision will be entered under Rule 155.*

---

[11] Because we find that the power retained by the decedent was sufficiently broad and unrestricted so as to require inclusion of both the principal and accumulated income of the eight trusts for his grandchildren in his gross estate under sec. 2036(a)(2), it is unnecessary for us to consider this power in relation to sec. 2038(a)(1). Suffice it to say that the lack of an ascertainable standard would similarly cause inclusion in this instance under that section also.