George Francis Walliser and Elsie Bareis Walliser, Appellants, v. Northern Trust Company of Chicago, Trustee under the Last Will of William Walliser, Deceased, Kathryn E. Wilson, Mary Wilson, Minor et al., Appellees.

Gen. No. 10,311.

Opinion filed June 29, 1949. Rehearing denied August 11, 1949. Released for publication August 15, 1949.

WEAVER & WEAVER and GEORGE W. THOMA, both of Wheaton, for appellants.

EDWIN A. HALLIGAN and R. A. BIERDEMANN, both of Chicago, for certain appellee.

EMIL J. BENSON, of Batavia, for certain other appellee.

JOHN S. WOODWARD, of Wheaton, guardian *ad litem*.

MR. JUSTICE BRISTOW delivered the opinion of the court.

Plaintiffs, George F. Walliser, and Elsie B. Walliser, are appealing from a judgment of the circuit court of DuPage county dismissing their complaint to have de-

clared null and void the trust created under the will of William Walliser, whose sole heir-at-law is plaintiff, George F. Walliser.

The facts in this cause are undisputed, and the validity of the trust involves the determination of essentially three issues: whether under its terms the trustee is granted unlimited discretion to invade the corpus so as to render the trust void; whether the trust contains fundamental uncertainties and repugnancies; and whether it violates the rule against perpetuities and the statute against accumulations.

Under the disputed fourth clause of the will, whereby the trust is established, the testator set forth in legal terms a plan of distribution envisaging the various contingencies of survival among his beneficiaries.

In substance, it was provided that 80 per cent of the net income of the trust shall be paid to his son, George F. Walliser, for so long as he shall live, and the remaining 20 per cent to his niece, Kathryn E. Wilson, for her lifetime. These payments to his son should not, however, be less than $1,800 per year, otherwise the trustee is authorized to draw upon the corpus for any amount necessary to meet this sum, "or any further amounts which may, in the opinion of said trustee, become necessary for the adequate care, support or maintenance of my said son, George F. Walliser."

It was further specified that if George F. Walliser died with issue during the lifetime of Kathryn E. Wilson, such issue would receive his 80 per cent of the net income *per stirpes*. If George F. Walliser died without issue, and Elsie B. Walliser were dead or remarried, all the net income would go to Kathryn E. Wilson during her lifetime, and if this income were less than $900 per year the trustees were authorized to draw upon the corpus to meet that designated sum. Similarly, if Kathryn E. Wilson died without issue, then all the net income should be paid to George F.

Walliser, provided that if this sum were less than $1,800 the trustee could invade the corpus to make up the difference.

This clause provided further that if George F. Walliser died without issue, and Elsie B. Walliser were living and not remarried, then she would receive one-third of the net income, and Kathryn E. Wilson would receive two-thirds. If, however, Kathryn E. Wilson were not living, her two-thirds share of the net income would go to her issue, or if she had no issue, then one-third each would go to the testator's brothers, John and George, for the remainder of their lives, and if they died prior to the death or remarriage of said Elsie B. Walliser, then this two-thirds share of the income would be accumulated and added to the corpus until the death of Elsie B. Walliser. If, however, she died or remarried during the lifetime of the testator's brothers, then they would each receive one-half of the net income for the remainder of their lives.

The final income provision stated, in substance, that upon the death of both George F. Walliser and Kathryn E. Wilson, without issue, and the death of the remaining designated beneficiaries, the trustee shall continue to hold the trust estate in perpetuity, and pay one-half of the net income to the trustees of the First Methodist Episcopal Church of West Chicago, Illinois, and the other half to St. Mary's Church.

The testator provided that the trust should terminate upon four contingencies: (1) on the death of the survivor of George F. Walliser and Kathryn E. Wilson, if both leave lawful issue, in which event two-thirds of the corpus shall go to the issue of George, *per stirpes,* and one-third to the issue of Kathryn; (2) on the death of the survivor of George and Kathryn, there being no surviving issue of Kathryn, in which event George's issue would take the entire corpus; (3) on the death of Kathryn, she having survived George, and there being no issue of George, and Elsie

is not then living, in which event Kathryn's issue would take the entire corpus; (4) on the death of Elsie, she having survived George and his issue, as well as Kathryn, the entire corpus and accumulations shall go to the issue of Kathryn.

In addition to the foregoing essential provisions for distribution of the trust, the will contains clause 7, which is also contested by plaintiffs. It is provided therein that all other heirs are disinherited, and that in the event of a dispute concerning the construction of any provision the executor or trustee is authorized to confer with the testator's attorney and their joint judgment shall govern in all questions concerning intestacy, cross remainders, and testamentary intentions, and shall be deemed conclusive and binding on all beneficiaries.

The trial court ordered that the testator's brother, George Walliser, be presumed dead, in accordance with plaintiff's complaint, but, in construing the will, found against plaintiff on all other issues and dismissed the complaint for want of equity.

On this appeal plaintiffs contend first that the trust is void *ab initio* on the ground that under clause 4, uncontrollable discretion is given the trustee to invade the corpus.

As hereinbefore noted, this provision states: " . . . and the Trustee is hereby authorized to draw upon the corpus of the trust for . . . any further amounts which may, in the opinion of said Trustee, become necessary for the adequate care, support and maintenance of my son, George Francis Walliser."

In support of plaintiffs' contention, cases are cited which have been reviewed and limited by our Supreme Court in *Booth v. Krug,* 368 Ill. 487. The will therein contained a clause practically identical to that in the instant case. It provided:

"In the event the said income does not meet the needs of my sister, Stella (Booth) Krug, as set forth in Paragraph Seven (7) above, then the executors of this Will are hereby authorized and directed to use any or all of my estate to meet the needs of my said sister."

With reference to this provision, the court stated:

"Only if the income of the fund does not equal the needs of the beneficiaries for their up-keep, maintenance and enjoyment, may the corpus be used. This does not give the trustee absolute power to use the corpus, and a court of equity will restrain any exercise of the power without reference to the conditions imposed."

Moreover, it was held in *Burke v. Burke,* 259 Ill. 262, that the possible exhaustion of the fund by the trustee, which potentiality also exists in the instant case, does not invalidate the trust, nor render its subject uncertain.

■ ■ It would appear, therefore, that under the recent authorities a clause authorizing a trustee to draw upon the corpus where necessary for the adequate support and maintenance of the beneficiary, does not give the trustee absolute and unlimited power, but sets forth a sufficient standard whereby a court of equity can determine whether the trustee abused the power authorized. Therefore, plaintiffs' contention that the aforementioned clause rendered the trust void *ab initio* is without legal merit.

■ In determining whether there are, as plaintiffs contend, alleged ambiguities and repugnancies which render the object of the trust uncertain and void, it is elementary that this court must consider the instrument in its entirety, in order to ascertain the intention of the testator. (*O'Hare v. Johnston,* 273 Ill. 458, 465.)

Under the fourth clause of the will, the testator sought to provide his son with 80 per cent of the income of the trust, or not less than $1,800 per year;

and to give his niece, Kathryn, 20 per cent of the net income, or not less than $900 per year. This trust was to terminate upon the death of the survivor of these two beneficiaries, under enumerated circumstances, and with a specified scheme of distribution. The first contingency for termination is the death of the survivor of George and Kathryn, where both leave issue, in which event George's issue would receive 2/3 of the corpus, and Kathryn's would receive 1/3. The second contingency refers to termination also on the death of the survivor of George and Kathryn, where there is no issue of Kathryn, and provides that George's issue should take the entire corpus. The third contingency similarly refers to termination on the death of the survivor of George and Kathryn, there being no issue of George, in which case the issue of Kathryn would take the entire corpus. The fourth contingency provides for termination of the trust and a gift to the issue of Kathryn, where Elsie survives George, his issue, and Kathryn, upon Elsie's death or remarriage.

Plaintiffs insist that the second, third and fourth termination clauses render the objects of the trust uncertain and are repugnant to the charitable trust provisions. Under the second contingency, plaintiffs argue, that the trust could terminate on the death of George, whether or not he left issue, and if Kathryn left no issue, as contemplated therein, the objects of the gift would be uncertain. Similarly, plaintiffs maintain, under the third contingency the trust could end on the death of Kathryn, whether or not she left issue, and the gift to her issue specified therein would likewise create an uncertainty.

This strained construction is negatived by the expressed intention of the testator. By first enumerating the distribution where both life tenants leave issue, and then considering alternatively the distribution where each one died without issue, and specifying under those circumstance gifts to the issue of the other, the testator clearly contemplated that such dis-

tribution and termination should be made only if there was surviving issue of either life tenant. The designation in this paragraph of the gift of the entire corpus to the issue of George, where Kathryn left no issue, and conversely, to the issue of Kathryn, where George left no issue, would have been a futile gesture if the testator intended that the trust should terminate as plaintiffs contend, on the death of the surviving life tenant, irrespective of any surviving issue.

After the enumeration of these alternative gifts to the issue of one life tenant where the other dies without issue, the testator makes no reference to termination of the trust where neither life tenant leaves issue. By failing to refer thereto in the termination clauses, and by specifically treating that contingency elsewhere, under the scheme for distribution of income, it is clear that the testator did not intend to terminate the trust if neither life tenant left issue, but had a distinct purpose which was not repugnant in any way to the gifts to the issue of George and Kathryn. Under those circumstances it is provided that 1/3 of the income be paid to the widow of George until her death, and 2/3 to the testator's brothers until their deaths, and then the entire income to be divided in half between two designated charities in perpetuity.

In ascertaining the testator's intention, it is significant that he also provided for the establishment of a charitable trust where George and Kathryn died without issue, under the terms of clause 5, which deals with the plan for distribution where the testator survives the life tenants. It would, therefore, do violence to the testator's intention to suggest that he meant to create a charitable trust if he survived George and Kathryn, they leaving no issue, but not if he predeceased them and they subsequently died without issue.

As suggested by defendant, no question of the testator's intention would have been raised if he had provided that the trust would have terminated "upon the

death of the survivor of my son George, *he leaving lawful issue,* and my niece Kathryn, there being no lawful issue of my niece, in which event I direct the trustees to pay over the corpus of the trust to the then living issue of my son George.''

This phraseology would be awkward and wordy. Inasmuch as the context of the termination provisions considered in the light of the testator's plan for distribution of the trust estate, indicates that he intended to create a charitable trust if George and Kathryn died without issue, whether he predeceased or survived them, this court would be warranted in adding the necessary phrase to effectuate that expressed intention. In *Desmarteau v. Fortin,* 326 Ill. 608, 612, it was held:

''Where the context indicates what the testator's intention was, words may be read into the will to effectuate that intention, which is contrary to the general rule that the intention must be gathered from the language expressed in the will . . . . Contrary to the general rule, where the context of the will requires reading into it words to give effect to the testator's intention, it may be done where the omitted words are necessary to carry out the evident intent, as the main purpose in construing wills is to give effect to the intention of the testator. . . .''

It is our opinion that, irrespective of the additional words, which could properly be read into the clause, the trust contains neither uncertainties nor repugnancies, and effect should be given thereto unless it violates a rule of law.

Plaintiffs insist that the trust created by the testator violated the rule against perpetuities. This rule requires that property must vest in someone within the period of a life, or lives, in being, at the death of the testator, and 21 years and 9 months thereafter. Under the terms of the will the gifts to the charities is contingent upon the death of George F.

Walliser without issue, the death or remarriage of his wife, the death of Kathryn E. Wilson without lawful issue, and the death of the testator's brothers. Under those circumstances, it is provided that the trustee shall continue to hold the trust estate in perpetuity, and pay the net income to the designated two churches.

It is apparent that if the gift of the income to the charities is to vest at all, it must be immediately upon the death of the designated persons, who are lives in being, and that if there are surviving issue, born after the death of the testator, the charitable trust will not come into existence. Therefore, there can be no violation of the rule against perpetuities in the vesting of the charitable interest.

Plaintiffs insist, however, that inasmuch as the charities are to be paid the income of the trust in perpetuity, the rule is violated. It has been repeatedly held that the rule against perpetuities pertains to the vesting of interest and not to their duration, (*Smith v. Renne*, 382 Ill. 26) and if there is no perpetuity in the first taker, and the gift to the charity vests immediately upon the expiration of lives in being, the rule cannot be interposed to invalidate the charitable trust even though it may continue indefinitely. Nor is it necessary that the corpus ever be paid to the charity.

In *Smith v. Renne, supra,* the court stated at p. 33:

"It is finally contended, however, that the principal trust fund is not disposed of by the will, but this is no objection in a charitable trust, as such a trust may continue indefinitely, and property be tied up forever in the hands of trustees without violation of the rule against perpetuities."

Plaintiffs argue further that the provision for the accumulation of two-thirds of the income until the death or remarriage of Elsie B. Walliser, where she survives George, his issue, Kathryn, her issue, and the testator's brothers, may violate the statute against accumulations, (ch. 30, par. 153, Ill. Rev. Stats. 1947

[Jones Ill. Stats. Ann. 135.02]) on the ground that Elsie may survive the testator's brothers by more than 21 years, during which time the income would be accumulating.

It cannot now be determined whether there will be a violation of the statute, however, if such an unlawful accumulation does occur, the legal effect will merely be that the produce. beyond the statutory limit of accumulation will be given to the same person who would have been entitled to it, if the accumulation had not been directed. (*Summers v. Chicago Title & Trust Co.*, 335 Ill. 564.)

In the instant case, therefore, if such an unlawful accumulation did occur, the effect would not be to render the provision, or the trust void, but a court of equity would merely direct the excess to be paid to the persons properly entitled thereto, which, in the instant case, would be tantamount to accelerating the payment of income to the charities.

With reference to the seventh clause of the will, plaintiffs contend that it is contrary to public policy and attempts to oust a chancery court of jurisdiction, and is, therefore, void. This provision, which gives the testator's attorney and the executor or trustee the sole power to decide all questions which might arise concerning intestacy, cross remainders and testamentary intention, does not, in intent or effect, prevent a court of equity, at the request of the beneficiaries, from construing the will. It merely represents an effort of the testator to avoid disputes and litigation over his estate, and make his testamentary intentions known to his beneficiaries. Moreover, this provision could be rejected without altering the testator's scheme of distribution (*Lawrence v. Smith*, 163 Ill. 149) and therefore does not constitute a valid ground for declaring the trust null and void.

It is the opinion of this court, upon a consideration of all the grounds presented by plaintiffs for declaring

void the trust, and holding George F. Walliser to be the sole heir-at-law, that the circuit court did not err in the dismissal of plaintiffs' complaint, and that the judgment of that court should properly be affirmed.

*Judgment affirmed.*