**Ruth L. DeLANCEY, Executrix of the Estate of Charles W. DeLancey, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 582.**

United States District Court
W. D. Arkansas,
Fayetteville Division.
March 17, 1967.

---

Dailey & Woods, Ft. Smith, Ark., for plaintiff.

Robert L. Waters, Atty., Tax Division, Dept. of Justice, Fort Worth, Tex., Charles M. Conway, U. S. Atty., Fort Smith, Ark., for defendant.

## OPINION

JOHN E. MILLER, District Judge.

This is a suit to recover certain estate taxes and interest thereon which were alleged to have been erroneously assessed and collected. The action was commenced on June 21, 1966, by the plaintiff, Mrs. Ruth DeLancey, as executrix of the estate of her deceased husband, Charles W. DeLancey. The defendant, the United States, filed its answer on August 19, 1966, and the cause was tried to the court on February 6, 1967. Both parties have submitted briefs. This court has jurisdiction pursuant to 28 U.S.C.A. § 1346(a) (1).

None of the material facts are controverted, and this opinion, containing findings of fact and conclusions of law, is filed pursuant to Rule 52, Fed.R.Civ.P.

On December 14, 1956, the decedent executed an inter vivos trust conveying certain property to the Merchants National Bank of Fort Smith, Arkansas, in trust for the use and benefit of Mrs. DeLancey during her life, with the remainder to go to their children. The decedent died testate on September 4, 1959. The Commissioner of Internal Revenue classified the assets comprising the corpus of the trust, as of the date of the death of the decedent, as includable in his gross taxable estate and assessed against the estate a deficiency of $19,-005.00, and interest in the amount of $3,-451.24. The plaintiff paid the assessment and filed a claim for refund. Her claim was denied, and she then commenced this action.

The question before the court is whether or not the property, which constituted the trust corpus, should be considered part of Mr. DeLancey's estate for estate tax purposes. As a general rule, property which is not owned by the

decedent at his death, but of which he divested himself inter vivos is not considered part of the estate for either probate or estate tax purposes. One may, however, divest himself of property during his life yet retain such control over the enjoyment of the property that, for estate tax purposes, the property is considered part of the estate.

The controlling statutes are 26 U.S.C.A. § 2036(a) and § 2038(a) (1), which read as follows:

"§ 2036. Transfer with retained life estate.

"(a) General rule.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

"(1) the possession or enjoyment of, or the right to the income from, the property, or

"(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom."

"§ 2038. Revocable transfers.

"(a) In general.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States)—

"(1) Transfers after June 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death."

The Government contends that the corpus of the trust, created by the decedent in his lifetime for the benefit of his wife (income beneficiary for life) and his two children (remainder beneficiaries), was includable in his estate for computation and assessment of estate taxes upon his estate under §§ 2036 and 2038, contending that the grantor reserved the unlimited and unqualified power in himself to invade the corpus for the benefit of the lifetime beneficiary (§ 2036) and that this, in effect, constituted a power to revoke the trust by distributing all of the corpus to the income beneficiary (§ 2038).

The plaintiff contends that the power to invade the corpus was limited by a "reasonably definite standard" set forth in the instrument, to which the grantor was subject, and therefore the above mentioned statutes do not apply to this transfer.

Title 26, C.F.R. § 1.674(b)–1(b) (5) (i), defines a reasonably definite standard as follows:

"A clearly measurable standard under which the holder of a power is legally accountable is deemed a reasonably definite standard for this purpose. For instance, a power to distribute corpus for the education, support, maintenance, or health of the beneficiary; for his reasonable support and comfort; or to enable him to maintain his accustomed standard of living; or to meet an emergency, would be limited by a reasonably definite standard."

The provision in the instrument which forms the basis for this dispute deals

with invasion of the corpus, and reads as follows:

> "3. *Invasion powers.* Upon the written direction of the Grantor to the Trustee during the lifetime of the Grantor, and in the sole and exclusive judgment and discretion of the Trustee after the death of the Grantor and during the life of the Income Beneficiary, the Trustee is authorized, at any time and from time to time, to pay to, or for the use and benefit of, the Income Beneficiary such part or all of the principal of the trust corpus as the Grantor in his lifetime shall direct, or the Trustee, after the Grantor's death, in its sole absolute discretion, shall deem necessary or advisable to provide for the comfortable care, maintenance and support of the Income Beneficiary. It is the intention of the Grantor that this power vested in the Trustee after the Grantor's death shall be liberally exercised, regardless of the effect which any such invasion or invasions may have upon the remaindermen. Any determination made by the Trustee in good faith as to the manner in which or the extent to which it shall exercise such powers shall be binding and conclusive upon all parties who might then or thereafter have or claim any interest in the trust corpus."

The decedent died without having exercised any right or power which he may have had by virtue of the above quoted provision.

■ In Jennings v. Smith, (2 Cir. 1947) 161 F.2d 74, it was decided that rights and powers retained by the grantor were not rights and powers contemplated by § 2036 and § 2038, if those rights and powers were so circumscribed by a determinable external standard that the holder of the right or power had no effective discretion with respect to the exercise thereof. At page 77 of 161 F.2d the court stated:

> "Since the trustees [grantor herein] were not free to exercise untrammeled discretion but were to be governed by determinable standards, their power to invade capital, conditioned on contingencies which had not happened, did not in our opinion bring the trust property within the reach of section 811(d)(2)."

That case has been cited with approval many times and, as stated in the Government's brief: "The rule announced in the Jennings case, supra, is now firmly embedded in the law."

■ There is no controversy here as to the existence of "determinable external standards," the only issue being, "To whom do they apply?" The Government contends that the limitations apply only to the Trustee after the grantor's death and not to the grantor. The plaintiff contends that the limiting language applies to both the Trustee and the grantor.

Beginning at the bottom of page 11 of the Government's brief, the following statement appears:

> "The executrix of the decedent's estate here contends that the trust instrument in question did provide an external standard limiting the bases upon which the decedent might have caused an invasion of trust corpus for the benefit of the life tenant. This argument of the executrix is founded upon the notion that the decedent might have caused an invasion only 'to provide for the comfortable care, maintenance and support of the Income Beneficiary.' We concede that the language quoted would amount to an appropriate external standard within the meaning of Jennings v. Smith, supra, if the *decedent's* rights and powers had been so circumscribed, but we contend that there was no such limitation upon the rights and powers held by the *decedent.*" (Emphasis added.)

The differences of the parties are founded upon the meaning of the language employed by the decedent in paragraph 3 of the trust instrument. The plaintiff contends that the rights and powers of the decedent were qualified by the language "to provide for the comfortable care, maintenance and support

of the Income Beneficiary," and the Government contends that the limiting language applies only to instances of invasion permissible in the Trustee's discretion after the Grantor's death.

The plaintiff contends, and the court agrees, that any fair reading of this invasion provision makes it clear that the qualification in the last clause applies to the entire sentence of which it is a part, and equally to the grantor during his lifetime and to the Trustee after the grantor's death. This can be clearly demonstrated by reading the entire sentence—first omitting reference to the Trustee after the grantor's death, and then omitting reference to the grantor.

"Upon the written direction of the Grantor to the Trustee during the lifetime of the Grantor, * * * and during the life of the Income Beneficiary, the Trustee is authorized, at any time and from time to time, to pay to, or for the use and benefit of, the Income Beneficiary such part of all of the principal of the trust corpus as the Grantor in his lifetime shall direct, * * * to provide for the comfortable care, maintenance and support of the Income Beneficiary."

* * *

"[I]n the sole and exclusive judgment and discretion of the Trustee * * * during the life of the Income Beneficiary, the Trustee is authorized, at any time and from time to time, to pay to, or for the use and benefit of, the Income Beneficiary such part or all of the principal of the trust corpus as * * * the Trustee * * * in its

sole absolute discretion, shall deem necessary or advisable to provide for the comfortable care, maintenance and support of the Income Beneficiary."

If the limiting clause were not designed to modify the entire sentence, the reading of the sentence as above would not make sense. It is obvious that the sentence can be broken down into two separate and complete sentences.[1]

The hypothetical situation described below further demonstrates the soundness of this conclusion. Suppose the grantor, during his lifetime, had desired that his wife take a trip to Europe and that she be given a new wardrobe of luxurious clothes and jewelry for the trip. In this instance the remaindermen would certainly be in a position to have the Trustee enjoined from allocating funds for such a purpose.

Likewise, if the trust beneficiary fell upon a difficult situation and needed funds for food or medical care, a court of equity would not hesitate to direct the Trustee to provide the funds even though the grantor refused to give his authorization.

It is, therefore, the opinion of the court that the powers and rights retained by the grantor of the trust were circumscribed by a reasonable external standard, and the trust corpus was not includable in the estate of Charles W. DeLancey for estate tax purposes. A judgment is being entered today for plaintiff against the defendant for the sum of $22,456.24, with interest at 6 percent from date of payment of the deficiency assessment.

1. At the trial Mr. E. B. Sparks, a Certified Public Accountant of considerable experience, testified, over the Government's objection, that he worked with Mr. DeLancey in formulating the plans for this trust agreement. He stated that it was the clear intention of Mr. De-Lancey that he would be entitled to invade the corpus only for the comfortable care, maintenance and support of Mrs. De-Lancey. However, since the court believes that the provision is clear and unambiguous, this testimony was not considered.