ESTATE OF RALPH BUDD, DECEASED, CROCKER-CITIZENS NATIONAL BANK, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5254–65. Filed February 7, 1968.

*Robert L. Thornburgh*, for the petitioner.
*Richard G. Daly*, for the respondent.

### OPINION

RAUM, *Judge:* Respondent determined a deficiency in estate tax of $191,842. The question presented is whether certain powers retained by decedent over two trusts created by him required inclusion of the value of the trust property in his gross estate.[1] The facts have been stipulated.

Ralph Budd, the decedent, died testate on February 2, 1962, a resident of California.

On March 21, 1932, decedent, then a resident of Minnesota, created a revocable trust, transferring certain securities and cash to himself and his wife, Georgia Budd, as trustees. Under the terms of the trust

---

[1] Part of the deficiency resulted from respondent's determination that dividends and premium refunds in the amount of $3,654.45 received from insurance policies were includable in the gross estate. Although the petition states that the entire deficiency is in controversy, no assignment of error was made with respect to this determination (See Tax Court Rule 7(c)(4)(B)(4)), and no argument has been made with respect to this issue on brief. Any objection to this adjustment must therefore be deemed to have been abandoned.

agreement, the net income was to be paid to decedent's daughter, Margaret Budd Osborne, during her life. Upon her death, the income was to be paid to her daughter, Georgiana Campbell, until she reached the age of 30, at which time Georgiana was to receive all the principal of the trust. Provision was made for other disposition in the event that Margaret left surviving issue other than Georgiana or in the event that she left no surviving issue.

In addition to requiring the trustees to pay the income to Margaret during her life, the trust agreement also gave the trustees limited authority to make distributions of corpus to her, as follows:

In the event of sickness, accident, misfortune or other emergency, the trustees then in office shall have authority, in their sole discretion, to advance to said Margaret Budd Osborne, or to use for her benefit, any portion of the principal necessary to take care of any expense arising out of the conditions here set forth.

The trust agreement also gave the trustees the following administrative powers:

First: The trustees shall have full power and authority, in their discretion, to hold and retain any of the property coming into their hands hereunder in the same form of investment as that in which it is received by them, although it may not be of the character of investment permitted by law to be made by trustees.

The trustees shall have full power and authority, in their discretion, to sell and assign, or to exchange the whole or any part of any property, at any time held by them, upon such terms and conditions as may to the trustees seem advisable, and to invest and reinvest any of the trust funds hereunder in such amounts as they may see fit, in such stocks, bonds or other personal property as they may, in their discretion, deem advisable, although the same may not be of the character permitted for trustees' investments by the ordinary rules of law, or by the statutes of the State of Minnesota.

\* \* \* \* \* \* \*

Ninth: Investments made by the trustees at a time when Ralph Budd is not one of the trustees, shall be limited to securities authorized by the then laws of the State of Minnesota for investment of funds of savings banks, and successor trustees may hold and retain as part of said trust fund any property coming to them from predecessor trustees, whether the same be savings bank investments or not, and they shall not be held liable for any failure on their part to change such investments.

Rights to subscribe for new and additional stock pertaining to stock held by the trustees may be exercised in the discretion of the trustees, and funds belonging to the trust may be used in payment for such new stock.

Finally, the trust instrument stated that it was to be "construed and interpreted under and by the laws of the State of Minnesota."

On May 22, 1936, the Mercantile National Bank of Chicago was appointed by the trustees, decedent and Georgia, to act as fiscal agent of the trustees and custodian of the trust assets, in the management and adminstration of the trust.

On December 14, 1936, by an agreement made between decedent and Margaret, decedent agreed to release his power to revoke the trust of March 21, 1932, and on the same date executed a "Surrender of Power of Revocation" whereby he relinquished his power to revoke or terminate this trust.

On or about April 28, 1959, decedent's wife Georgia resigned as a trustee, whereupon decedent, as surviving trustee, appointed the County National Bank & Trust Co. of Santa Barbara, predecessor in interest to Crocker-Citizens National Bank, as successor cotrustee of the trust. Decedent remained the other cotrustee until his death.

From May 22, 1936, until February 2, 1962, the date of decedent's death, no invasions of principal were made for the benefit of the life beneficiary, Margaret. In 1964, the then trustees invoked their discretionary power to apply $10,000 of the corpus for Margaret's benefit. That $10,000 was given to her to use as a downpayment on a house having a sales price of $36,000. Her husband had become mentally incompetent and was unable to produce income as a result of a recent illness. The couple had no savings as a consequence of their usual mode of living, "which was to spend rather than to save." Prior to that time, Margaret "had always rented, rather than bought, her home."

On November 14, 1932, decedent, then a resident of Illinois, created the second of the trusts here in controversy, transferring certain securities to himself as sole trustee. The entire net income was payable in equal portions to Helen U. Budd and Beulah A. Budd, sisters of the decedent, as long as they both lived, the survivor to receive the entire net income until her death. Upon the death of the survivor of the two sisters, the entire net income was payable to Georgiana Campbell, decedent's granddaughter, for her life. If Georgiana predeceased either of the sisters, then upon the death of the survivor of the sisters, the trustee was directed to distribute the entire trust estate to decedent, if living, and if not living to decedent's "heirs at law * * * in the proportions in which they would take under the laws of descent of the State of Illinois then in force." If Georgiana survived both sisters, then upon her death the entire trust estate was to be distributed to decedent, if living, but if he was not then living to others in accordance with various specified contingencies. Helen U. Budd and Beulah A. Budd were still alive at the date of decedent's death.

The trust agreement of November 14, 1932, provided, in part, as follows:

EIGHTH. If at any time or from time to time, in the judgment of the Trustee, the aggregate of the income payable hereunder and accruing from all other sources to any beneficiary then entitled to income hereunder, shall be insufficient to provide for the proper care, support and medical attention of such beneficiary

during the period of any illness or other incapacity, or in case such income shall be insufficient to provide for the suitable support, education and maintenance of any such beneficiary, the Trustee may, in his uncontrolled discretion, apply thereto or pay to such beneficiary for such purpose a portion of the principal of the Trust Estate; * * *

\* \* \* \* \* \* \*

TENTH. Said Trustee shall have and is hereby given full power:

\* \* \* \* \* \* \*

(2) To sell at public or private sale, to invest and reinvest the property at any time comprising the Trust Estate hereunder, and from time to time to change any such investments in such manner as the Trustee shall deem best, and to invest any or all of said property in stocks, bonds, mortgages or other securities and property which said Trustee may deem safe and proper, regardless of any restrictions imposed upon the investment of trust funds by the statutes of the State of Illinois or any other state.

\* \* \* \* \* \* \*

(4) In his uncontrolled judgment and discretion to retain and hold as long as he may see fit, as investments of trust funds under this trust, any and all stocks, bonds or other securities at any time forming a part of the Trust Estate.

\* \* \* \* \* \* \*

(9) To determine what is "income" and what is "principal" hereunder, and his decision thereon shall be final; provided, however, that (1) in the case of bonds, notes or debentures purchased at a discount the entire subsequent sale price or maturity value shall be credited to principal; (2) in the case of bonds, notes or debentures purchased at a premium the Trustee shall charge the premium immediately against income without amortizing the same; and (3) any stock dividend or subscription right which may be declared upon or issued in connection with any stock constituting a portion of the Trust Estate shall be considered as principal and not as income.

(10) So long as the Donor, Ralph Budd, shall be the Trustee hereunder, he shall have the power to sell securities and other property for the account of the Trust estate to himself individually, or purchase securities or other property for the account of the Trust Estate from himself individually, so long as such sale is made in good faith and for a consideration that is fair and reasonable, it being the intention that the general rule that trustees shall not make a profit out of trust funds for themselves shall not apply so as to prevent the purchase or sale of securities and other property by the Trustee from or to himself individually, and said Trustee shall not be required to account for any profits which may accrue to him from such sale or purchase as aforesaid, nor shall any such profit be counted in diminution of the reasonable compensation provided herein to be paid to the Trustee.

(11) To do all other acts in his judgment needful or desirable for the proper and advantageous control and management of the property held in trust hereunder, to the same extent and with the same effect as might legally be done by an individual in absolute ownership and control of said property.

\* \* \* \* \* \* \*

TWELFTH: So long as the Donor, Ralph Budd, shall live he shall have the power to appoint a successor trustee or trustees by instrument in writing lodged with said successor trustee or trustees, and specifying the date or event upon

which the appointment of such successor trustee or trustees shall take effect, and upon the date specified or the happening of the event specified, such successor trustee or trustees shall immediately be vested with all the titles, rights, powers, duties and discretions (except the rights and powers conferred by subparagraph (10) of paragraph Tenth hereof) vested in the original Trustee hereunder, and shall be entitled to possession and control of the Trust Estate. * * * In the event of the death, resignation, incapacity, inability or refusal to act of any successor trustee or trustees during the lifetime of said Ralph Budd, then a successor trustee or trustees may be appointed by said Ralph Budd, by instrument in writing as hereinabove set forth. The power of said Ralph Budd, so long as he shall live, to appoint a successor trustee or trustees, shall not be exhausted by one or more users [sic] thereof, and he shall have the power, after having appointed a successor trustee or trustees, to remove, in his discretion, any such successor trustee or trustees and to appoint himself as successor trustee * * *

On May 22, 1936, the Mercantile National Bank of Chicago was appointed by the decedent in his capacity as trustee to act as the fiscal agent of the trustee and the custodian of the trust assets in the management and administration of the November 14, 1932, trust. From May 22, 1936, until on or about September 26, 1958, the Mercantile National Bank of Chicago did so act.

On September 26, 1958, decedent, by written instrument, resigned as sole trustee of the trust of November 14, 1932, and appointed as his successor sole trustee the County National Bank & Trust Co. of Santa Barbara, predecessor in interest to Crocker-Citizens National Bank. From September 26, 1958, until the present, the Crocker-Citizens National Bank has acted as sole trustee. However, decedent never renounced the power retained under paragraph Twelfth of the trust agreement to remove, in his discretion, a successor trustee and to appoint himself as trustee.

No invasions of principal were made from the trust created on November 14, 1932, during decedent's lifetime.

In the estate tax return, the executor elected to have the estate valued as of the date of decedent's death. Although the existence of the trusts of March 21, 1932, and November 14, 1932, was disclosed in Schedule G of that return, no value was included in the gross estate on account of those trusts. The fair market value of the property held in the trust of March 21, 1932, was $400,723.79 on the date of decedent's death; the fair market value of property held in the trust of November 14, 1932, was $193,388.80 on that date. In the notice of deficiency the Commissioner determined that both amounts were includable in the decedent's gross estate.

The Commissioner relies upon sections 2036 (a) (2) and 2038 of the 1954 Code [2] as authority for the inclusion of the two trusts in decedent's gross estate.[3] Decedent was a trustee of the trust of March 21, 1932, at the time of his death, so that the powers granted to the trustees of that trust must be considered held by him for purposes of those two Code sections, even though they were to be exercised in conjunction with a cotrustee, and were exercisable only in his fiduciary capacity as trustee and not in his individual capacity. *Jennings* v. *Smith*, 161 F. 2d 74, 77 (C.A. 2). Similarly, although decedent resigned as sole trustee of the trust of November 14, 1932, in 1958, he retained until his death the power to remove, in his discretion, the existing trustee and appoint himself sole trustee, so that the powers granted the trustee in that trust must also be considered to have been held by decedent at his death. See secs. 20.2036–1(b) (3) and 20.2038–1(a) (3), Estate Tax Regs. The question remains, however, whether the powers granted the trustees in those two trust agreements left decedent with either "the right * * * to designate the persons who shall possess or enjoy the

---

[2] SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

\* \* \* \* \* \* \*

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

SEC. 2038. REVOCABLE TRANSFERS.

(a) IN GENERAL.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States)—

(1) TRANSFERS AFTER JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death.

(2) TRANSFERS ON OR BEFORE JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death. Except in the case of transfers made after June 22, 1936, no interest of the decedent of which he has made a transfer shall be included in the gross estate under paragraph (1) unless it is includible under this paragraph.

[3] The Commissioner does not attempt to include the Nov. 14, 1932, trust in the gross estate under sec. 2037 by reason of the reversionary interest reserved by the decedent therein.

[trust] property or the income therefrom" or the power to "alter, amend, or revoke" the trust. We hold that the decedent retained no such right or power.

The trust provisions relied upon by the Government in support of its position fall into two general categories: (a) Those authorizing the trustees to make distributions of corpus to the life beneficiaries under specified conditions, and (b) those giving the trustees broad powers in administering or managing the trust estates. We think that neither of these classes of powers retained herein, whether considered separately or in the aggregate, satisfies the requirements of section 2036 or section 2038.

(a) It is well established that where the retained power to invade is "conditioned upon an event which had not occurred before the settlor's death," *Jennings* v. *Smith*, 161 F. 2d 74, 77 (C.A. 2), or where the power "is limited by a determinable external standard, enforceable in a court of equity," *Michigan Trust Co.* v. *Kavanagh*, 284 F. 2d 502, 505 (C.A. 6), the retention of such power is not sufficient to bring the trust within statutory provisions like the ones relied upon herein by the Government. Cf., e.g., *United States* v. *Powell*, 307 F. 2d 821 (C.A. 10) ; *State Street Trust Co.* v. *United States*, 263 F. 2d 635, 637 (C.A. 1) ; *Delancey* v. *United States*, 264 F. Supp. 904 (W.D. Ark.) ; *Estate of Marvin L. Pardee*, 49 T.C. 140; *Estate of Robert W. Wier*, 17 T.C. 409; *Estate of C. Dudley Wilson*, 13 T.C. 869, affirmed per curiam 187 F. 2d 145 (C.A. 3) ; *Estate of Walter E. Frew*, 8 T.C. 1240; *Estate of Milton J. Budlong*, 7 T.C. 756, modified on other grounds *sub nom. Industrial Trust Co.* v. *Commissioner*, 165 F. 2d 142 (C.A. 1).

In construing the two trust agreements before us, we note that the March 21, 1932, agreement specifically provides that it is to be interpreted under the law of Minnesota. The November 14, 1932, trust agreement contains no such provision; but the decedent was a resident of Illinois when it was executed, and at the time of his death was domiciled in California where the corporate trustee was located. However, an examination of the law of all three States fails to disclose any significant differences between them in respect of the interpretation of the two trust instruments or the extent to which a court of equity would enforce the provisions thereof.

Under the trust agreement of March 21, 1932, the trustees' authority to distribute corpus was limited to cases of "sickness, accident, misfortune or other emergency," and under the trust agreement of November 14, 1932, corpus was distributable to the income beneficiary only when such beneficiary's income from all sources was "insufficient to provide for the proper care, support and medical attention of such beneficiary during the period of any illness or other incapacity," or was "insufficient to provide for the suitable support, education and

maintenance of any such beneficiary." We think that these conditions or circumstances under which the grantor, as trustee, could invade corpus of either trust for an income beneficiary are comparable to the ones involved in the cases cited above, and similarly reflect external standards to which a court of equity would give effect. See also *Ingraham* v. *Ingraham*, 169 Ill. 432, 470–471, 48 N.E. 561, 572–573; *French* v. *Northern Trust Co.*, 197 Ill. 30, 39–40, 64 N.E. 105, 108; *Walliser* v. *Northern Trust Co. of Chicago*, 338 Ill. App. 263, 269, 87 N.E. 2d 129, 131; *United States* v. *Taylor*, 254 F. Supp. 752, 755–756 (N.D. Cal.).

Nor is a different result required herein by reason of the fact that the trustees' power was discretionary, for the exercise of that power was limited by an external standard fixed by the agreement itself. And although it may be true that a court of equity ordinarily will not substitute its discretion for that of the trustee, nevertheless, even where the power is granted in terms of the "sole" or "uncontrolled" discretion of the trustee, it will review his action to determine whether in light of the standards fixed by the trust instrument, such discretion has been honestly exercised. See *United States* v. *Taylor*, 254 F. Supp. at 755–756; *In re Ferrall's Estate*, 41 Cal. 2d 166, 173–174, 258 Pac. 2d 1009, 1013; *In re Lackmann's Estate*, 156 Cal. App. 2d 674, 678, 320 Pac. 2d 186, 189; *Estate of Walter E. Frew*, 8 T.C. at 1243–1244; *Estate of C. Dudley Wilson*, 13 T.C. at 870, 872–873; *DeLancey* v. *United States*, 264 F. Supp. at 908; *State Street Trust Co.* v. *United States*, 160 F. Supp. 877, 880 (D. Mass.), affirmed on other grounds 263 F. 2d 635 (C.A. 1). Cf. *Estate of Willard V. King*, 37 T.C. 973, 980. We conclude that the reserved powers to invade corpus in this case do not bring either of the two trusts within the terms of section 2036 or 2038.

(b) The Commissioner relies also upon the broad administrative or managerial powers given to the trustees as a basis for including the trusts in the decedent's gross estate under the foregoing statutory provisions. These powers are set forth in our findings, and the ones that the Government stresses particularly are (1) the authority to retain or invest in securities or property that may not be of a character permitted for trustees' investments under applicable State law, (2) the authority to determine what is income and what is principal, and (3) the authority of decedent as trustee individually to sell securities or other property to the trust or to purchase securities or other property from the trust without accounting for any profit that he might realize on any such transaction. The first of these powers was included in both trusts, but the second and third were incorporated only in the November 14, 1932, trust. Moreover, the power to classify receipts of the trust as between income and principal was substantially limited by the trust provisions themselves, and the power to deal with

the trust was expressly made subject to the condition that any sale "is made in good faith and for a consideration that is fair and reasonable."

We think that these powers were hardly broad enough to be regarded as enabling the decedent to designate who would enjoy the trust property or income therefrom, or to alter, amend, or revoke the trust, cf. *United States* v. *Powell*, 307 F. 2d 821, 825–826 (C.A. 10); *Estate of Marvin L. Pardee*, 49 T.C. 140; *Estate of Willard V. King*, 37 T.C. 973; *Estate of Aline P. Peters*, T.C. Memo. 1964–167; *Estate of Pierre Jay Wurtz*, T.C. Memo. 1960–102, and that the Government's reliance in this connection upon *State Street Trust Co.* v. *United States*, 263 F. 2d 635 (C.A. 1), is misplaced.

The majority opinion in *State Street Trust Co.* noted that the case was "very close" (p. 638), and made clear that neither the power to invest in property other than "legals" nor the authority to determine what is "principal" and what is "income" was sufficient to require inclusion of the trust in the decedent's gross estate (p. 638). In holding that the trust before it was thus includable, however, the court relied upon a much broader range of reserved powers which it characterized "as broad as language can make it and the law permits" (p. 639). See *Estate of James H. Graham*, 46 T.C. 415, 429 fn. 8. The *State Street Trust Co.* case must be read in the light of the unusual facts involved. The present case does not fall within the exceptional rule of that decision, and whether the reserved powers be considered separately or in the aggregate in conjunction with those dealt with in (a) above, they are not sufficient to bring section 2036 or section 2038 into play.

*Decision will be entered under Rule 50.*