**Marian A. BYRUM, Executrix under the Last Will and Testament of Milliken C. Byrum, Deceased, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 20526.**

United States Court of Appeals, Sixth Circuit.

April 8, 1971.

Harry Phillips, Chief Judge, dissented and filed opinion.

**950**

Kenneth L. Gross, Atty., Dept. of Justice, Washington, D. C., for defendant-appellant; Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Loring W. Post, Attys., Dept. of Justice, Washington, D. C., on brief; William W. Milligan, U. S. Atty., Alvin J. McKenna, Asst.

U. S. Atty., Columbus, Ohio, of counsel.

Larry H. Snyder, Columbus, Ohio, for plaintiff-appellee; Chamblin, Snyder & Henry, Columbus, Ohio, on brief.

Before PHILLIPS, Chief Judge, BROOKS, Circuit Judge, and O'SULLIVAN, Senior Circuit Judge.

BROOKS, Circuit Judge.

This is an appeal by the United States from an adverse ruling of the District Court, 311 F.Supp. 892, on the issue of whether certain assets transferred into an irrevocable trust could be included in decedent-grantor's estate by operation of 26 U.S.C. § 2036.[1] The action arose by a claim for refund of taxes paid and was decided on motions for summary judgment with a stipulated set of facts. We affirm the judgment of the District Court.

That portion of the trust agreement [2] that the Government contends made the

1. Section 2036 [as amended by Section 18 (a) (2) of the Revenue Act of 1962, P.L. 87–834, 76 Stat. 960].

"*Transfers with retained life estate*

"*(a) General Rule.*—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

"(1) the possession or enjoyment of, or the right to the income from, the property, or

"(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom."

2. The Trust Agreement in pertinent parts provided:

"Article IV. Irrevocable Trust.

"This Trust shall be irrevocable and Grantor reserves no rights, powers, privileges or benefits either as to the Trust estate or the control or management of the trust property, except as set forth herein.

"Article V. Powers Of The Trustee.

"The Trustee shall have and possess and may exercise at all times not only the rights, powers and authorities incident to the office or required in the discharge of this trust, or impliedly conferred upon or vested in it, but there is hereby expressly conferred upon and vested in the Trustee all the rights, powers and authorities embodied in the following paragraphs in this Article, which are shown by way of illustration but not by way of limitation:

\* \* \* \* \*

"Sell. 5.02 To sell at public or private sale, to grant options to sell. to exchange, re-exchange or otherwise dispose of all or part of the property, real or personal at any time belonging to the Trust Estate, upon such terms and conditions and for such consideration as said Trustee shall determine, and to execute and deliver all instruments of sale or conveyance necessary or desirable therefor.

\* \* \* \* \*

"Investments. 5.05 To invest any money in the Trust estate in stocks, bonds, investment trusts, common trust funds and any other securities or property, real or personal, secured or unsecured, whether the obligations of individuals,

assets transferred into trust includable in the grantor's estate under 26 U.S.C. § 2036 relates to the grantor's retained powers to: 1) vote the shares of unlisted stock in the trust corpus; 2) veto the transfer by the trustee of any of these shares of stock; and 3) to remove and appoint a successor corporate trustee at will. It should be noted that the shares of unlisted stock transferred into trust ·

corporations, trusts, associations, governments, expressly including shares and/or obligations of its own corporation, or otherwise, either within or outside of the State of Ohio, as the Trustee shall deem advisable. without any limitation whatsoever as to character of investment under any statute or rule of law now or hereafter enacted or existing regarding trust funds or investments by fiduciaries or otherwise. "Voting. 5.06 To vote by proxy or in person any stock or security comprising a part of the trust estate, at any meeting, except that during Grantor's lifetime, all voting rights of any stocks which are not listed on a stock exchange, shall be exercised by Grantor, and after Grantor's death, the voting rights of such stocks shall be exercised by Grantor's wife during her lifetime.

\* \* \* \* \*

"Leases. 5.09 To make leases for any length of time, whether longer or shorter than the duration of this Trust, to commence at the present time or in the future; to extend any lease; to grant options to lease or to renew any lease; it being expressly understood that the Trustee may grant or enter into ninety-nine year leases renewable forever.

\* \* \* \* \*

"Income Allocation. 5.13 To determine in its discretion how all receipts and disbursements, capital gains and losses, shall be charged, credited or apportioned between income and principal.

\* \* \* \* \*

"Limitation. 5.15 Notwithstanding the powers of the Trustee granted in paragraphs 5.02, 5.05, 5.09 and 5.11 above, the Trustee shall not exercise any of the powers granted in said paragraphs unless (a) during Grantor's lifetime said Grantor shall approve of the action taken by the Trustee pursuant to said powers, (b) after the death of the Grantor and as long as his wife, Marian A. Byrum, shall live, said wife shall approve of the action taken by the Trustee pursuant to said powers.

"Article VI. Division At Age 21.

\* \* \* \* \*

"Principal Disbursements. 6.02 If prior to attaining the age of thirty-five (35), any one of the children of Grantor shall have an emergency such as an ex-

tended illness requiring unusual medical or hospital expenses, or any other worthy need including education of such child, the Trustee is hereby authorized and empowered to pay to such child or use for his or her benefit such amounts of income and principal of the Trust as the Trustee in its sole judgment and discretion shall determine.

\* \* \* \* \*

"Article VIII. Removal of Trustee.

"If the Trustee, The Huntington National Bank of Columbus, Ohio, shall at any time change its name or combine with one or more corporations under one or more different names, or if its assets and business at any time shall be purchased and absorbed by another trust company or corporation authorized by law to accept these trusts, the new or successor corporation shall be considered as the said The Huntington National Bank of Columbus, Ohio, and shall continue said Trusts and succeed to all the rights, privileges, duties and obligations herein conferred upon said The Huntington National Bank of Columbus, Ohio, Trustee.

"Grantor, prior to his death, and after the death of the Grantor, the Grantor's wife, Marian A. Byrum, during her lifetime, may remove or cause the removal of The Huntington National Bank of Columbus, Ohio, or any successor Trustee, as Trustee under the Trusts and may thereupon designate another corporate Trustee to serve as successor Trustee hereunder.

"Article IX. Miscellaneous Provisions.

\* \* \* \*

"Discretion. 9.02 If in the opinion of the Trustee it shall appear that the total income of any beneficiary of any Trust fund created hereunder is insufficient for his or her proper or suitable support, care and comfort, and education and that of said beneficiary's children, the Trustee is authorized to pay to or for such beneficiary or child such additional amounts from the principal of the Trust Estate as it shall deem advisable in order to provide suitably and properly for the support, care, comfort, and education of said beneficiary and of said beneficiary's children, and the action of the Trustee in making such payment shall be binding on all persons.

were those of a closed corporation, and the grantor's retaining of the right to vote the stock in trust combined with the stock he personally retained kept him in voting control of the corporation.

The Government's principal argument is that the powers retained by grantor made the value of the shares of stock transferred into trust includable in his estate because the grantor retained for his life "the possession or enjoyment of * * * the property * * *." 26 U.S.C. § 2036(a) (1). The District Court properly concluded that the retaining of the power to veto the sale of these shares of stock by the trustee did not, under present interpretation of the statute, make the value of the shares transferred includable in the grantor's estate, see Reinecke v. Northern Trust Company, 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410 (1929); Michigan Trust Company v. Kavanagh, 284 F.2d 502 (6th Cir. 1960); Hays' Estate v. Commissioner of Internal Revenue, 181 F.2d 169 (5th Cir. 1950); Jennings v. Smith, 161 F.2d 74 (2nd Cir. 1947); Estate of Budd, 49 T.C. 468 (1968); Estate of Pardee, 49 T.C. 140 (1967); *Cf.*, State Street Trust Company v. United States, 263 F.2d 635 (1st Cir. 1959). Nor, for that matter, did the grantor's retaining of the power to replace the trustee by another corporate trustee make the value of the shares includable. See Estate of Budd, *supra* and cf. Rev.Reg. 20.2036–1 (b) (3) *with* n. 2 Trust Agreement, Article VIII.

The only power retained by the grantor which may possibly have made the transferred assets includable in his estate was the power to vote the unlisted shares of stock. The District Court concluded that this did not make the assets includable and we agree. Several cases have considered this aspect of retained control and have concluded that it is not sufficient to make the value of shares transferred in trust includable in the grantor's estate. See Estate of Willard V. King, 37 T.C. 973 (1962); Yeasel v. Coyle, 2 CCH Fed.Estate and Gift Tax Rep. (68–1 U.S. Tax Cas.) ¶ 12,524. The Govern-

ment's attempt to distinguish these cases is without substance. In addition, the Government's reliance on United States v. O'Malley, 383 U.S. 627, 86 S.Ct. 1123, 16 L.Ed.2d 145 (1966) and Joy v. United States, 404 F.2d 419 (6th Cir. 1968) is inappropriate under the facts of the present case. In *O'Malley* the crucial factor making the value of the transferred assets includable in the grantor's estate was that the grantor retained the power to regulate or allocate the distribution of income. Similarly, in Joy v. United States, *supra,* it was the grantor's retained power to accumulate and distribute income which proved fatal. This was not the situation under the present trust agreement. See n. 2 Trust Agreement, Pars. 5.13, 5.15, 6.02, 9.02. The Government contends that since the grantor remained in voting control of the corporation he could, by electing the Board of Directors, determine dividend policies and thus the grantor could indirectly regulate or control who enjoyed the income from the property. However, the grantor by retaining the voting right of the stock only controlled who could serve as directors of the corporation. These individual directors would then be under a fiduciary obligation to exercise sound business judgment in declaring dividends and could not act in bad faith to the injury of the beneficial owners of the stock. This obligation is governed by an ascertainable standard and is analogous to the situation which exists in cases where the grantor retains broad managerial control of a trust, see Reinecke v. Northern Trust Company, *supra;* Jennings v. Smith, *supra;* Estate of Budd, *supra,* and does not result in making these assets includable in the grantor's estate.

■■■ While Revenue Ruling 67–54, 1967–1 Cum.Bull. 269, strictly construed is distinguishable from the facts in this case, it does tend to support the position advanced by the Government on this appeal. Rulings, however, do not have the force of law and are at most merely persuasive. Lincoln Savings and Loan Association v. Commissioner of Internal

Revenue, 422 F.2d 90, 92 (9th Cir. 1970), U.S.App.Pndg.; 1 Mertens, Law of Federal Income Taxation, § 3.20. Insofar as such Ruling might be applied to the facts of this case, it is in conflict with the law as interpreted by the courts and should be disregarded. United States Truck Sales Company v. United States, 229 F.2d 693, 696 (6th Cir. 1956); First Kentucky Company v. Gray, 190 F.Supp. 824, 825 (W.D.Ky., 1960), affirmed 309 F.2d 845 (6th Cir. 1962).

The judgment is affirmed.

PHILLIPS, Chief Judge (dissenting).

I respectfully dissent.

Mr. Byrum, the decedent, transferred to the trust some of his shares of stock in three closely-held corporations of which he was the controlling stockholder. He reserved the right to vote the shares which he transferred to the trust. He also continued to have the right to vote the shares owned by him individually which were not transferred to the trust. His right to vote the transferred shares, combined with his right to vote the shares which he held himself and did not transfer in trust, kept him in control of all three corporations throughout his lifetime.

The record ownership of shares of stock in the three corporations as of the time of Mr. Byrum's death on September 5, 1964, was as follows:

| Corporation | Trust | Settlor | Stock Outstanding |
|---|---|---|---|
| Byrum Lithographing | 165 | 855 | 1440 |
| Graphic Realty | 276 | 202 | 574 |
| Bychrome | 308 | 287 | 678 |

As I interpret the trust instrument, Mr. Byrum's control of the three corporations was the same after the creation of the trust as it was before. After the transfers, as before, the settlor remained in a position to dictate the dividend policies of the corporation. He had the power to control the distribution of income to the trust. He could determine when and whether the corporation would distribute earnings as dividends and thus when and whether the trust would receive income from the stock which would be available for distribution to the beneficiaries of the trust.

In addition to reserving the right to vote the stock, he retained the power to veto any sale of the stock by the trustee and the right to remove the trustee and appoint a new trustee.

It is not determinative, in my opinion, that any one of these retained rights, standing alone in a different factual situation, might not have subjected the stock to the federal estate tax as a part of the taxable estate of the decedent. I would hold that the retained powers in the aggregate, under the facts and circumstances of this case, operated to reserve to the settlor the enjoyment of the shares and the right to designate the persons who would enjoy the income from them, within the meaning of § 2036(a) (1) and (2) of the Internal Revenue Code of 1954.

I agree with the Government's interpretation of the trust instrument: that through his control of the corporations the settlor retained the power to determine whether the beneficiaries of the trust would receive income from the shares during his lifetime. When the trust instrument is thus construed, the settlor possessed the right to designate the persons who would enjoy the income from the shares within the meaning of § 2036(a) (2). United States v. O'Malley, 383 U.S. 627, 86 S.Ct. 1123, 16 L.Ed. 2d 145; Joy v. United States, 404 F.2d 419 (6th Cir.).

Since Mr. Byrum guaranteed to himself the right to control the corporations for his lifetime through rights retained under the trust instrument, the retained rights were of substantial present economic benefit to him. He was assured a position as a salaried officer of the corporations for as long as he desired. He could increase his salary or fringe benefits. He could control all corporate decisions affecting him financially. I would hold that he retained for his life

the enjoyment of the transferred stock within the intendment of § 2036(a) (1). *See,* Commissioner v. Estate of Church, 335 U.S. 632, 644–646, 69 S.Ct. 322, 93 L.Ed. 288.

I further disagree with the majority opinion with respect to Revenue Ruling 67–54, 1967–1 Cum.Bull. 269. A copy of this ruling is made an appendix to this dissenting opinion. I consider this ruling to be a correct interpretation of the statute.

I would reverse.

### APPENDIX

Rev.Rul. 67–54, 1967–1 Cum.Bull. 269:

The value of nonvoting corporate common stock transferred in trust is includible in the grantor's gross estate for Federal estate tax purposes, where the grantor retained for the remainder of his life a controlling interest in the corporate voting stock and where (1) the grantor was himself a trustee of the trust at his death, or (2) the trustee was restricted in any way in his power to dispose of the nonvoting stock, and the trustee held the nonvoting stock at the grantor's death. Since the grantor retained the power to regulate the income from the transferred property, he retained for his life or for a period which did not in fact end before his death the right to designate the persons who shall possess or enjoy the property or the income therefrom. The value of the nonvoting shares included in the gross estate should reflect the additional value inherent in the closely held voting shares by reason of control of the company policies.

Advice has been requested whether the value of nonvoting corporate common stock transferred in trust is includible in the deceased grantor's gross estate for Federal estate tax purposes where he had the power to regulate, for his life or for a period which did not in fact end before his death, the potential income from the transferred property through his retention of the corporation's voting stock, in cases where (1) as trustee he could control the disposition of the transferred property during his lifetime, or (2) the trustee was restricted in any way in his power to dispose of the transferred property, and the trustee held the transferred property at the grantor's death.

The decedent transferred assets to a corporation which issued nonvoting preferred stock and debentures, which he retained, for the full current value of the assets transferred. The corporation also issued 10 shares of voting and 990 shares of nonvoting common stock. The decedent transferred the 990 shares of nonvoting stock in trust for the benefit of his children. The trust owned the 990 shares at the date of the decedent's death. The trustee was required to get the permission of the grantor before disposing of the transferred stock. By retaining the 10 shares of voting stock, which he still owned at the time of his death, the decedent had complete control of the company and was in a position to determine its dividend policy in respect of the nonvoting shares. By the restriction upon the trustee, the decedent had control over the disposition of the nonvoting stock.